**GOVERNMENT OF the VIRGIN ISLANDS**

v.

**Raymond SCOTLAND and St. Clair Springette.**

**Appeal of St. Clair SPRINGETTE.**

**No. 79–1188.**

United States Court of Appeals, Third Circuit.

Argued Dec. 7, 1979.

Decided Feb. 6, 1980.

George M. Alexis (argued), Federal Public Defender, Charlotte Amalie, St. Thomas, V. I., for appellant.

Ishmael A. Meyers, U. S. Atty., Terry M. Halpern, Asst. U. S. Atty., Dist. of the Virgin Islands, Charlotte Amalie, St. Thomas, V. I., William C. Bryson (argued), Dept. of Justice, Washington, D. C., for appellee.

Before GIBBONS, WEIS and GARTH, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

St. Clair Springette appeals his conviction on two counts of burglary, V.I.Code Ann. tit. 14 § 444(1) (Supp.1978), and two counts of grand larceny, V.I.Code Ann. tit. 14 § 1083(1) (1964). He contends that the conviction was the result of constitutional error in that the district court refused to enforce the government's initial plea proposal to which the defendant had agreed to plead guilty. We find no constitutional error and affirm the judgment.

## I. FACTUAL BACKGROUND

On November 3, 1978, the appellant, St. Clair Springette, was charged by information with two counts of burglary and two counts of grand larceny.[1] The information also named co-defendant Scotland in all four counts. This four count information was docketed as criminal case No. 78–219. There were also two other pending cases against Springette: the charges of grand larceny and buying and receiving stolen property were pending under docket No. 78–147, and the charge of third-degree burglary was pending under docket No. 78–200. At arraignment on case No. 78–219, Springette entered a plea of not guilty to the charges and a discovery conference followed on November 11, 1978.

At the conference, the Assistant United States Attorney Halpern offered Springette the following plea bargain in order to dispose of all charges pending against him. Springette would plead guilty to one count of third-degree burglary in No. 78–219 or in the other case against him of that charge (No. 78–200) and to a misdemeanor in the third case pending against him (No. 78–147). There were no other requirements put forth by the government with regard to the plea bargain itself. However, with respect to sentence recommendation (assuming the defendant accepted the plea proposal), the Assistant United States Attorney added that the government's position would depend upon Springette's willingness to testify against Scotland, his co-defendant in No. 78–219.

Defense counsel in case No. 78–219 communicated the plea to Springette on November 29, 1978, at which time appellant had been brought to court for his change of plea in case No. 78–147. Appellant agreed that he would be willing to plead guilty in No. 78–200 and 78–147, if No. 78–219 was dismissed, but stated that he would not testify for the government in No. 78–219. However, Halpern upon learning of the acceptance added another condition to the

---

1. Veh.Code Ann. tit. 14 §§ 444(1), 1083(1) (Supp.1978).

government's proposal. She stated that the government would no longer agree to the plea bargain unless Springette also would agree to make a sworn statement that his earlier statement to the police, implicating Scotland in No. 78–219, was true.[2]

Springette moved the district court to order specific performance of the initial plea arrangement, and contended that the government impermissibly had added a new element to the proposed plea.[3] Following the trial, the district court filed a written order and opinion and denied the motion for specific performance, stating that although the government had engaged in "bad conduct" the plea was never consummated (officially entered), and therefore there was no remedy available; the defendant had had a trial. Case No. 78–200 has subsequently been dismissed by the government.

## II. THE GOVERNMENT'S WITHDRAWAL OF THE PLEA PROPOSAL

We are presented with the question of whether a defendant's agreement to plead guilty in accordance with the government's initial plea offer gives the defendant a right to specific performance of the terms of that offer. The Fourth Circuit recently has answered this question in the affirmative in *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979). We decline to follow the *Cooper* rationale.

In *Cooper* the court held that the defendant, in circumstances similar to this case, had a right to compel specific performance of an unconsummated plea bargain as a matter of fundamental fairness within substantive due process guarantees of the fifth amendment and under the sixth amend-

ment right to effective assistance of counsel. Since the plea bargain here was, in fact, accepted prior to the government's withdrawal, there is perhaps a stronger basis for ordering specific performance than existed in *Cooper*.[4] For the reasons outlined below, however, we still find no basis for binding the government to its bargain.

The court in *Cooper* concluded that there were seven factual elements crucial to its finding that defendant's constitutional rights to substantive due process had been violated. These factors were as follows:

[1] The proposal was specific and unambiguous in form, and was made without any reservation related to a superior's approval or otherwise; [2] its content was reasonable in context; [3] it was made by a prosecutor with apparent (and probably actual) authority at that time; [4] it was communicated promptly to the defendant so that no question of staleness was involved; [5] the defendant assented promptly and unequivocally to its terms, indicated his assent to his counsel, and was entitled so far as the record shows to assume that its communication to the government would consummate the plea agreement, [6] defense counsel did in fact within a matter of a few hours communicate defendant's acceptance to the government by sheer fortuity being told of the government's 'withdrawal' before he could vocalize his client's 'acceptance'; [7] and finally, the reason for the attempted withdrawal had nothing to do with extenuating circumstances affecting the government's or any public interest

---

**2.** Following his arrest on October 20, 1978, Springette had made a statement under oath to the police that implicated Scotland in the offenses in No. 78–219. Apparently, at the time of the plea negotiations, the Assistant United States Attorney was unaware that the statement had been made under oath and thus that there was no need of a sworn statement.

**3.** Appellant entered a plea of guilty to petty larceny, a misdemeanor, in No. 78–147.

**4.** In *Cooper* the Assistant United States Attorney made an offer to the defendant through his

counsel. Counsel communicated the offer to defendant who agreed to accept the plea proposal. However, before defense counsel was able to communicate acceptance of the plea to the government or the defendant was able to enter a guilty plea, the Assistant United States Attorney's Supervisor instructed him to withdraw the proposal, which he did. The plea bargain was therefore never consummated and the defendant never alleged any detrimental reliance on the bargain. The defendant eventually stood trial and was convicted.

that were unknown when the proposal was extended. . . .

594 F.2d at 19.

The government argues, *inter alia*, that this case is distinguishable from *Cooper* with regard to some of these factual matters. However, we find, for purposes of determining the appropriate legal principles, that *Cooper* and the case sub judice are factually so similar that the alleged distinctions are simply specious.[5]

### A. The Sixth Amendment Right to Effective Counsel

 The court in *Cooper* reasoned that the government's retraction of the plea proposal caused the defendant to lose confidence in his counsel's capability, such that the defendant's sixth amendment right to effective counsel was violated. 594 F.2d at 18–19. We do not find that the sixth amendment right to effective counsel is implicated in this unconsummated plea bargain situation. We refrain from holding that, absent any detrimental reliance, the possibility that a defendant may lose faith in his attorney when presented with unfavorable changes in negotiations violates his sixth amendment right to effective counsel.

We note that in any plea negotiations, even when they do not involve the withdrawal of a plea proposal, there is a possibility that the defendant may lose faith in his attorney when, for example, the government fails to offer any plea proposal or offers only an unfavorable . one. This factor, without more, is not enough to violate the defendant's sixth amendment right.[6] The appropriate focus for determining whether the right to effective counsel has been violated is on defense counsel and his performance rather than on defendant's perception of defense counsel.[7]

### B. Due Process Principles and the Consequences of Enforcing an Unconsummated Plea

The substantive due process argument is the real crux of the *Cooper* holding and presents us with much weightier concerns.

The Supreme Court has recognized that a defendant may plea bargain, and that if the process is properly administered, "it is to be encouraged."[8] The major advantage for the defendant is that his exposure to penalty is obviously reduced and he receives a lesser penalty for pleading guilty.[9] The

5. The first three factors of *Cooper* are clearly present in this case. The proposal to Springette was unambiguous, reasonable and made by someone with apparent authority. The timing of the offer, the communication to Springette, and his acceptance were not as close in time as in the *Cooper* case, but were not so far apart as to raise a question of staleness. And finally, the withdrawal of the plea proposal had nothing to do with extenuating circumstances, such as newly discovered evidence, etc.

6. The court in *Cooper* restricted its holding as narrowly as possible to the particular facts presented in that case. 594 F.2d at 19. It noted that the prosecutor made the offer without any "reservation related to a superior's approval or otherwise." *Id.* It is reasonable to extrapolate that defense counsel would have a duty to inform his client that an offered proposal is conditional if the prosecutor had so informed him. Thus, according to the *Cooper* rationale, defendant's knowledge of such a contingency would remedy the ineffective assistance of counsel claim. As a practical matter, it may be presumed that the government in the fourth circuit will make only conditional offers to defendants. If this type of "conditional"

offer was not alone sufficient under the *Cooper* holding, the next logical step would be for a court to inquire as to whether the condition that the prosecutor cites is a legitimate one or one simply to avoid the holding of *Cooper*. Given the established breadth of prosecutorial discretion at all stages of the criminal process, particularly in charging and plea negotiation, *see Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), this type of inquiry would appear to be an invasion of that discretion. Although *Cooper* does not go that far, it does invade the province of the United States Attorney and there is potential for further questionable concrete invasions.

7. *See, e. g., DeFalco v. United States,* (Nos. 78–2126a, 78–2209) (3d Cir. Dec. 28, 1979) (en banc); *Moore v. United States,* 432 F.2d 730, 736 (3d Cir. 1970).

8. *Santobello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 497, 30 L.Ed.2d 427 (1971).

9. *See Brady v. United States,* 397 U.S. 742, 753, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). *See generally* Alschuler, *The Trial Judge's Role in*

advantages to the state and society are usually declared to be that prompt punishment attains society's objectives of punishment more effectively than belated punishment; bargaining results in saving judicial and prosecutorial resources so that more time can be conserved for cases that involve substantive issues of defendants' guilt; a defendant who pleads guilty is more remorseful and more likely to be successfully rehabilitated.[10] The *Cooper* rule should be analyzed in the context of these recognized advantages of plea bargaining.

The government contends that the *Cooper* rule interferes with judicial discretion and prosecutorial discretion and will discourage prosecutorial plea proposals. The contention that the *Cooper* rule may interfere with judicial discretion is another way of arguing that the court's power to accept or reject a plea and evaluate its fairness will be impaired. For example, if a court were compelled to grant specific enforcement and hold the prosecutor to his bargain, the court would not be evaluating the plea itself. We reject this argument as being without merit: a court may (1) hold the prosecutor to his offer and then (2) proceed to evaluate the fairness of the bargain.

The government also argues that the *Cooper* rule would discourage prosecutorial offers of pleas contrary to the Court's approval or encouragement of plea bargaining in *Santobello*. United States Attorneys will be reluctant to offer to bargain until they are very sure that they want to be bound by the offer. The fact that the government would have to be very careful about all elements of the offer certainly is not detrimental. However, if the result of the rule

is either a delay in bargaining or fewer plea proposals, there is also a consequent diminished savings of prosecutorial and judicial resources. Moreover, the advantages of quick disposition and quick punishment are also diminished.

The role of the prosecutor must also be considered. He has at least four different and possible functions: (1) to act as an administrator and dispose of cases in the fastest, most efficient manner; (2) to act as an advocate for the state to maximize convictions and severity of sentences; (3) to judge the individual's social circumstances and ensure fairness, (4) to act as a quasi-legislator, granting concessions because the law is too harsh.[11] The plea bargaining process implicates all of these functions. The bargaining process has often been analogized to contract principles, and plea agreements are often likened to unilateral contracts—consideration is not given for the prosecutor's promise until the defendant actually enters his plea of guilty.[12] The defendant is entitled to withdraw his plea any time before he has officially entered it, and any time afterwards if it was not entered voluntarily and knowingly. This obviously is as it should be, since constitutional standards require more than contract principles. The fact that defendant has the right to withdraw the plea does not necessarily mean that the United States Attorney should have the equivalent right. However, binding the prosecutor to his original plea does interfere with his discretionary functions, *i. e.*, determining what he feels is fairest in light of the defendant's circumstances, the government's resources, and the statute involved.[13] Such judicial

---

Plea Bargaining, 76 Colum.L.Rev. 1059 (1976); Tiffany, Arichai & Peters, *A Statistical Analysis of Sentencing in Federal Court: Defendants Convicted After Trial*, 4 J. Legal Stud. 369 (1975).

**10.** *See Brady v. United States*, 397 U.S. at 753, 90 S.Ct. at 1471.

**11.** *See* Alschuler, *The Prosecutor's Role in Plea Bargaining*, 36 U.Chi.L.Rev. 50, 52–53 (1968).

**12.** *See* Westen & Westin, *A Constitutional Law of Remedies For Broken Plea Bargains*, 66 Calif.L.Rev. 471, 525 n. 189 (1978).

**13.** The Court's reluctance to interfere in prosecutorial charging matters and plea bargaining is illustrated by *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), holding that the prosecutor's warning to defendant that he would be indicted as habitual criminal if he didn't plead guilty, and the subsequent indictment did not violate due process. *See generally* Pizzi, *Prosecutorial Discretion*,

interference in prosecutorial discretion involves an intermingling of their respective roles.

Although the contentions concerning prosecutorial discretion and the discouragement of pleas are persuasive, the availability of an alternative remedy for the defendant is the convincing factor for rejecting the *Cooper* rule.

If the defendant is not allowed to compel specific performance of a plea proposal, he may withdraw his tendered plea or refuse to consent to any new bargain proposed by the prosecutor. It may be argued that this "remedy" is insufficient, particularly in cases where, as here, the government's acts were far from exemplary. However, the defendant is then entitled to his constitutional right to trial by jury. This fundamental right would be belittled if we held it to be an insufficient "remedy" or result for a defendant who has not been induced to rely on the plea to his detriment. The prosecutor is under no duty to plea bargain—if no offer is made, the defendant is entitled to a trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has. The courts cannot compel the prosecutor to offer a plea bargain to eliminate the resulting discrimination between these two types of defendants. There is no rule that dictates that the prosecutor may not simply let a case go to trial. In the case sub judice, Springette is in the same position as if he had not been offered a plea because no detrimental reliance is alleged. Thus we reject a *Cooper*-type rule that would allow specific performance of an unconsummated plea in the absence of such detrimental reliance because a jury trial on the charge is an adequate remedy.

When, however, the defendant detrimentally relies on the government's promise, the resulting harm from this induced reliance implicates due process guarantees.[14] This basic estoppel principle was recognized by the Court in *Santobello*; when a defendant pleads guilty in reliance on an agreement with the prosecutor, that promise must be fulfilled. *Santobello* arguably could be extended to cover the situation where the defendant has not yet entered the plea, but has relied on the bargain in such a way that a fair trial would no longer be possible. There is no claim in this case of such reliance. Absent such reliance, we do not find the *Cooper* rule compelling.

### III.

Accordingly the judgment of the district court will be affirmed.

*Plea Bargaining and the Supreme Court's Opinion in Bordenkircher v. Hayes,* 6 Hastings Const.L.Q. 269 (1978).

**14.** *See, e. g., United States v. Swinehart,* 614 F.2d 853 (3d Cir. 1980); *United States v. Hammerman,* 528 F.2d 326 (4th Cir. 1975); *Harris v. Superintendent,* 518 F.2d 1173 (4th Cir. 1975) (per curiam) (enforcing plea proposal in instances where defendant has performed some obligation of the agreement before the government has reneged).