[Crim. No. 19222. First Dist., Div. Two. Dec. 19, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LATRICIA A. BARNETT, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Mark Fogelman, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Herbert F. Wilkinson and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant appeals from a judgment entered on a jury verdict finding her guilty of grand theft (Pen. Code, § 487, subd. 1) and burglary (Pen. Code, § 459) as charged. She contends that: 1) she was deprived of her federal and state substantive due process rights because she was forced to stand trial after her codefendant rejected the "package deal" plea bargain offer conditioned on the acceptance of the bargain by both; 2) the booking search of her purse was unreasonable; 3) her statements prior to booking were erroneously admitted; and 4) her unduly harsh sentence violated the principles of *In re Lewallen* (1979) 23 Cal.3d 274 [152 Cal.Rptr. 528, 590 P.2d 383]. For the reasons set forth below, we have concluded that there is no merit to any of these contentions and that the judgment must be affirmed.

As there are no contentions concerning the sufficiency of the evidence and defendant concedes her participation in the events, a precis of the facts of the offenses will suffice. Additional facts will be set forth in our discussion of defendant's contentions on appeal.

About noon on April 25, 1978, defendant and her two coperpetrators, Jackson and Howard, entered a San Francisco jewelry store owned and operated by one of the victims, M. Figenbaum. The jewelry store was about 20 feet by 20 feet and contained a workbench and several display cases. Jackson approached the counter while defendant and Howard browsed around the store. After a $1 purchase, Jackson's questions and conduct aroused the suspicions of Figenbaum, who was confined to a wheelchair. Figenbaum called for help when Howard walked to the rear of the store and tried the safe door, which was closed but not locked. Figenbaum warned Howard that the rear portion of the store was off limits to customers, moved himself to the rear of the store, and again called for help. He then saw defendant, who had her back to him, proceed to the cash drawer and remove about $30 in paper currency that he had in the drawer.

Ms. Gitlitz, Figenbaum's sister, arrived in response to his calls for help. She put down her purse and sweater and proceeded to wait on Jackson. Shortly after she entered, defendant and Howard left. Figenbaum saw Jackson open Ms. Gitlitz' purse and remove a wallet. Jackson left shortly thereafter.

Defendant and her companions and their Chrysler vehicle were also observed by a neighbor, D. Stanley, who called the police after Ms. Gitlitz informed him of the theft of her wallet. Stanley provided descriptions and several digits of the license number. Shortly after San Francisco plainclothes Officers Brewer and Shegoleff had received a radio report and the descriptions, they stopped a Chrysler vehicle on Lincoln Way, a short distance from the jewelry store. Five digits of the license number matched those reported by Stanley and the occupants of the car matched the descriptions provided by Stanley and Ms. Gitlitz. The vehicle driven by Howard was stopped and its occupants arrested; Jackson was in the passenger seat; in the back seat was 15-year-old Ms. S. J. and defendant. Both had purses which Brewer placed in the front seat.

The jewelry items found on the front seat and floor, as well as a watch taken from Jackson and a watch taken from Howard were subsequently identified as merchandise from Figenbaum's store. Jackson had $36.59 in his pocket. During the booking process, defendant's purse was searched by Shegoleff. He found a wallet containing identification documents and credit cards belonging to Ms. Gitlitz. Also during the booking procedure, Shegoleff asked defendant for her name and date of birth. Defendant supplied the requested information and volunteered that Ms. S. J. "had nothing to do with it." A subsequent search of the room where defendant and Ms. S. J. had been confined before the booking revealed additional items taken from Figenbaum's shop.

Later that same afternoon, Ms. Gitlitz identified defendant, Jackson and Howard as the persons she had seen in the store. Figenbaum confirmed her identifications at the trial. Defendant's right index fingerprint was found on one of the display cases in Figenbaum's store.

 Defendant's major contention on appeal is that as a result of the "package plea bargain," she was deprived of her federal and state rights to due process. The record indicates that the "package" offered to

defendant and Jackson was that both had to accept the offer[1] or stand trial. Initially, defendant accepted, but Jackson refused. Subsequently, defendant's trial was severed from Jackson's as a result of his pretrial medical delays. After the jury returned guilty verdicts against defendant in her trial, Jackson was permitted to plead guilty on the terms originally offered to him, and did so.[2] Defendant was sentenced to 16 months in prison.

We reject the People's argument that the issue is moot or not properly before us because the record is not complete as to the details of the plea bargain. Our Supreme Court in *People* v. *West* (1970) 3 Cal.3d 595, 609-610 [91 Cal.Rptr. 385, 477 P.2d 409], left in the discretion of the trial court the method by which the precise details of the bargain were to be incorporated into the record for purposes of review. ▮▮▮ While more information would be helpful, the instant record is sufficient to raise the due process issues presented.[3]

▮ The parties agree that the substantive due process issue is one of first impression in this state and one on which the federal circuit courts do not agree. Also in issue are the due process aspects of the prosecution's "package" condition, i.e., that both defendants must accept the plea bargain.

The federal constitutional arguments on each side were aptly summarized in *Government of Virgin Islands* v. *Scotland* (3d Cir. 1980) 614 F.2d 360, as follows: "We are presented with the question of whether a defendant's agreement to plead guilty in accordance with the govern-

---

[1]Defendant was offered the opportunity to plead guilty to one of the two charged counts and receive a misdemeanor sentence; Jackson, the opportunity to plead guilty to one count of petty theft with a prior (Pen. Code, § 666), the remaining felony counts to be dismissed and his mitigated term sentence to run concurrently with a parole revocation based on the same facts. Jackson's punishment for the instant offense pursuant to the bargain was a felony and appropriately punished more heavily (*People* v. *Beaty*, (1978) 84 Cal.App.3d 239 [143 Cal.Rptr. 319]).

[2]Pursuant to Evidence Code section 452, subdivision (d) and section 453, as requested, we have taken judicial notice of the proceedings against Jackson, San Francisco Superior Court No. 96984, and particularly the change of plea form.

[3]At the initial sentencing hearing on December 19, 1978, defendant's trial counsel stated the plea bargaining facts for the record. The People did not challenge her version of the facts at the initial or subsequent sentencing hearing. Thus, the People are now precluded from challenging a matter in which the prosecutor below acquiesced (*People* v. *Miller* (1972) 7 Cal.3d 219, 227 [102 Cal.Rptr. 841, 498 P.2d 1089]).

ment's initial plea offer gives the defendant a right to specific performance of the terms of that offer. The Fourth Circuit recently has answered this question in the affirmative in *Cooper v. United States*, 594 F.2d 12 (4th Cir. 1979). We decline to follow the Cooper rationale.

"In *Cooper* the court held that the defendant, in circumstances similar to this case, had a right to compel specific performance of an unconsummated plea bargain as a matter of fundamental fairness within substantive due process guarantees of the fifth amendment and under the sixth amendment right to effective assistance of counsel. Since the plea bargain here was, in fact, accepted prior to the government's withdrawal, there is perhaps a stronger basis for ordering specific performance than existed in *Cooper*. For the reasons outlined below, however, we still find no basis for binding the government to its bargain.

"The court in *Cooper* concluded that there were seven factual elements crucial to its finding that defendant's constitutional rights to substantive due process had been violated. These factors were as follows: [1] The proposal was specific and unambiguous in form, and was made without any reservation related to a superior's approval or otherwise; [2] its content was reasonable in context; [3] it was made by a prosecutor with apparent (and probably actual) authority at that time; [4] it was communicated promptly to the defendant so that no question of staleness was involved; [5] the defendant assented promptly and unequivocally to its terms, indicated his assent to his counsel, and was entitled so far as the record shows to assume that its communication to the government would consummate the plea agreement, [6] defense counsel did in fact within a matter of a few hours communicate defendant's acceptance to the government by sheer fortuity being told of the government's 'withdrawal' before he could vocalize his client's 'acceptance'; [7] and finally, the reason for the attempted withdrawal had nothing to do with extenuating circumstances affecting the government's or any public interest that were unknown when the proposal was extended . . . ." (Pp. 362-363.)

"The substantive due process argument is the real crux of the *Cooper* holding and presents us with much weightier concerns.

"The Supreme Court has recognized that a defendant may plea bargain, and that if the process is properly administered, 'it is to be

encouraged.' The major advantage for the defendant is that his exposure to penalty is obviously reduced and he receives a lesser penalty for pleading guilty. The advantages to the state and society are usually declared to be that prompt punishment attains society's objectives of punishment more effectively than belated punishment; bargaining results in saving judicial and prosecutorial resources so that more time can be conserved for cases that involve substantive issues of defendants' guilt; a defendant who pleads guilty is more remorseful and more likely to be successfully rehabilitated. The *Cooper* rule should be analyzed in the context of these recognized advantages of plea bargaining.

"The government contends that the *Cooper* rule interferes with judicial discretion and prosecutorial discretion and will discourage prosecutorial plea proposals. The contention that the *Cooper* rule may interfere with judicial discretion is another way of arguing that the court's power to accept or reject a plea and evaluate its fairness will be impaired. For example, if a court were compelled to grant specific enforcement and hold the prosecutor to his bargain, the court would not be evaluating the plea itself. We reject this argument as being without merit: a court may (1) hold the prosecutor to his offer and then (2) proceed to evaluate the fairness of the bargain.

"The government also argues that the *Cooper* rule would discourage prosecutorial offers of pleas contrary to the Court's approval or encouragement of plea bargaining in *Santobello*. United States Attorneys will be reluctant to offer to bargain until they are very sure that they want to be bound by the offer. The fact that the government would have to be very careful about all elements of the offer certainly is not detrimental. However, if the result of the rule is either a delay in bargaining or fewer plea proposals, there is also a consequent diminished savings of prosecutorial and judicial resources. Moreover, the advantages of quick disposition and quick punishment are also diminished.

"The role of the prosecutor must also be considered. He has at least four different and possible functions: (1) to act as an administrator and dispose of cases in the fastest, most efficient manner; (2) to act as an advocate for the state to maximize convictions and severity of sentences; (3) to judge the individual's social circumstances and ensure fairness, (4) to act as a quasi-legislator, granting concessions because the law is too harsh. The plea bargaining process implicates all of these functions. The bargaining process has often been analogized to contract principles,

and plea agreements are often likened to unilateral contracts—consideration is not given for the prosecutor's promise until the defendant actually enters his plea of guilty. The defendant is entitled to withdraw his plea any time before he has officially entered it, and any time afterwards if it was not entered voluntarily and knowingly. This obviously is as it should be, since constitutional standards require more than contract principles. The fact that defendant has the right to withdraw the plea does not necessarily mean that the United States Attorney should have the equivalent right. However, binding the prosecutor to his original plea does interfere with his discretionary functions, i.e., determining what he feels is fairest in light of the defendant's circumstances, the government's resources, and the statute involved. Such judicial interference in prosecutorial discretion involves an intermingling of their respective roles.

"Although the contentions concerning prosecutorial discretion and the discouragement of pleas are persuasive, the availability of an alternative remedy for the defendant is the convincing factor for rejecting the *Cooper* rule.

"If the defendant is not allowed to compel specific performance of a plea proposal, he may withdraw his tendered plea or refuse to consent to any new bargain proposed by the prosecutor. It may be argued that this 'remedy' is insufficient, particularly in cases where, as here, the government's acts were far from exemplary. However, the defendant is then entitled to his constitutional right to trial by jury. This fundamental right would be belittled if we held it to be an insufficient 'remedy' or result for a defendant who has not been induced to rely on the plea to his detriment. The prosecutor is under no duty to plea bargain—if no offer is made, the defendant is entitled to a trial. There is no rational basis for holding, in essence, that a trial is sufficient for the defendant who has not been offered a plea and insufficient for the one who has. The courts cannot compel the prosecutor to offer a plea bargain to eliminate the resulting discrimination between these two types of defendants. There is no rule that dictates that the prosecutor may not simply let a case go to trial. In the case sub judice, Springette is in the same position as if he had not been offered a plea because no detrimental reliance is alleged. Thus we reject a *Cooper*-type rule that would allow specific performance of an unconsummated plea in the absence of such detrimental reliance because a jury trial on the charge is an adequate remedy" (pp. 363-365).

The People here urge us to follow the *Scotland* rationale, *supra*. Defendant argues that *Scotland* is inapposite and poorly reasoned, points out that *Cooper, supra*, 594 F.2d 12, was recently reaffirmed in *U.S.* v. *Society of Independent Gasoline Marketers of America* (4th Cir. 1980) 624 F.2d 461, and urge us to follow the reasoning of *United States* v. *Bambulas* (10th Cir. 1978) 571 F.2d 525, 526-527, cert. den.) *Bambulas*, however, supports the People's position rather than the defendant's. As the court said at pages 526-527: "Clearly a plea bargain consisting of the government's agreement to drop Counts II and III in exchange for a guilty plea to Counts I and IV would be permissible. *Assuming that the government also required all co-defendants to enter guilty pleas, this aspect of the plea bargain in our view does not invalidate the guilty plea*, where Bambulas has previously denied any coercive effect, where he has failed to explain his prior denial, and where the government fulfilled its part of the plea bargain by moving to dismiss the other counts which motion was granted by the court." (Italics added.) Defendant argues that here, after the fortitious severance, she was ready to fulfill her part of the bargain, but the People were not.

We find particularly persuasive on the instant facts *McMillian* v. *United States* (8th Cir. 1978) 583 F.2d 1061, which held that: 1) no constitutional due process right of the petitioner was violated by the prosecution's offer to a codefendant of a "better deal" than the prosecution offered to the petitioner; and 2) after the petitioner rejected the proposed plea bargain and chose to go to trial, the court was not bound by any recommended sentence in the rejected bargain. Here, of course, the codefendant Jackson, who first rejected but then accepted the plea bargain, did not receive overall a "better deal" than defendant. (See fn. 1 above at p. 569.)

Nor can we agree with defendant that the package condition of the instant plea bargain is tantamount to: 1) an improper attempt to influence the testimony of defendant or a defense witness (*United States* v. *Henricksen* (5th Cir. 1977) 564 F.2d 197, 198; *United States* v. *Morrison* (3d Cir. 1976) 535 F.2d 223) a condition concerning the treatment of a third party (*Bordenkircher* v. *Hayes* (1978) 434 U.S. 357, fn. 8, p. 364 [54 L.Ed.2d 604, 611, 98 S.Ct. 663]; *People* v. *Collins* (1978) 21 Cal.3d 208, 216, fn. 3 [145 Cal.Rptr. 686, 577 P.2d 1026]).

Defendant argues that where, as here, an agreement has been unequivocally accepted, it must be specifically enforceable. She attempts

to distinguish *Scotland, supra,* 614 F.2d 360, on the ground that there, the agreement was not accepted by the defendant before its withdrawal by the government, and cites *United States* v. *Swinehart* (3d Cir. 1980) 614 F.2d 853. In that case however, as explained at pages 856-857, the appellate court remanded for an evidentiary hearing, as it could not determine whether the "fairness and justice" standard for the withdrawal of the plea bargain had been met. The record was unclear as to whether a change had been made in the language of the agreement, and why the defendants sought and the government agreed, to change the requirement of passing the polygraphic examination.

To us, the significant factor is whether in the plea bargain a defendant has given up a valuable constitutional right, such as the right to a speedy trial (*United States* v. *Garcia* (9th Cir. 1975) 519 F.2d 1343, 1345)[4] or otherwise detrimentally relied on the promises made in the plea bargain (cf. *Roe* v. *United States Attorney* (2d Cir. 1980) 618 F.2d 980). We note that recently in *Corbitt* v. *New Jersey* (1978) 439 U.S. 212 [58 L.Ed.2d 466, 99 S.Ct. 492], the concurring opinion observed that plea bargains serve a state interest without penalizing defendant's assertion of his legal rights. "In the bargaining process, individual factors relevant to the particular case may be considered by the prosecutor in charging and by the trial judge in sentencing, regardless of the defendant's plea; the process does not mandate a different standard of punishment depending solely on whether or not a plea is entered" (pp. 231-232 [58 L.Ed.2d at p. 482]). (See McCoy & Mirra, *Plea Bargaining as Due Process in Determining Guilt* (1980) 32 Stan.L.Rev. 887, 920-921, 941.) Accordingly, we find persuasive the reasoning and approach of the Third Circuit in *Scotland, supra,* 614 F.2d 360, quoted above. We reiterate that the prosecution may elect to let a case go to trial and that a jury trial represents the ultimate of due process. We hold therefore that no federal due process rights of the defendant were violated by the package plea bargain here in issue.

■ Defendant further complains of a substantive state constitutional due process violation on the same grounds and relies on *People* v. *Collins, supra,* 21 Cal.3d 208. We need not discuss her state due process contentions in detail, as on October 3, 1980, our state Supreme Court granted a hearing in *People* v. *Calloway* (Cal.App., Crim. 21673), in

---

[4]*Garcia* is the only Ninth Circuit case and predates *Cooper, supra,* 594 F.2d 12.

which the court, relying on *Collins, supra*, granted to the defendant specific performance of a plea bargain that admittedly had been violated by the People. This state's general approach was set forth in *People v. Kaanehe* (1977) 19 Cal.3d 1, 14 [136 Cal.Rptr. 409, 559 P.2d 1028], as follows: "Specific enforcement of a particular agreed upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion." We do not think the instant case falls within one of the rare exceptions to the *Kaanehe* rule, quoted above (i.e., when the prosecution's breach was wilfull and deliberate). In any event, as indicated above, defendant's jury trial was an adequate remedy to repair any harm caused by the breach. As defendant received a jury trial, her reliance on *People v. Fowler* (1980) 109 Cal.App.3d 557 [167 Cal.Rptr. 235], footnote 3 at page 566, is inapposite. The footnote points to the illegality of penalizing a defendant for asserting a right to a jury trial. Accordingly, we also conclude that there was no state due process violation here.

■ Defendant's contention concerning the unreasonableness of the booking search of her purse, which revealed Ms. Gitlitz' wallet, is untenable. *People v. Sims* (1980) 109 Cal.App.3d 900 [167 Cal.Rptr. 506], and *People v. Silvey* (1980) 110 Cal.App.3d 67 [167 Cal.Rptr. 566], are inapposite, as the searches there were not booking searches but searches after arrest or apprehension without exigent circumstances. This court (Div. Three) in *People v. Bundesen* (1980) 106 Cal.App.3d 508 [165 Cal.Rptr. 174], pointed out, at page 515, that booking searches have been repeatedly upheld to maintain jail security, to discover evidence pertaining to the crime charged, and to safeguard the arrestee's personal belongings, and concluded at page 516: "In order to sustain appellant's contention on appeal this court must hold that *Chadwick* and the California cases which have relied upon *Chadwick* impliedly invalidate booking searches of all closed containers. *Chadwick* requires law enforcement officers to obtain a warrant only if the officers 'have reduced luggage or other personal property *not immediately associated with the person of the arrestee* to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence,...' (*United States v. Chadwick, supra*, 433 U.S. 1, 15... italics added.) It can hardly be argued that a wallet is not closely associated with the person of the arrestee. It therefore appears that *Chadwick* and the California Su-

preme Court cases which relied upon *Chadwick* (*Dalton* and *Minjares*) have not impliedly overruled booking searches at least to the extent the booking search is of personal property 'immediately associated with the person of the arrestee....' (*Chadwick, supra*, at p. 15....)" Here, defendant's purse was personal property immediately connected with defendant and properly searched to disclose evidence of the crime charged.

■ Defendant next contends that the admission of her volunteered statement during booking constituted prejudicial reversible error, pursuant to *People* v. *Rucker* (1980) 26 Cal.3d 368, 387-389 [162 Cal.Rptr. 13, 605 P.2d 843].[5] As indicated in our precis of the facts, defendant's spontaneous and volunteered statement that the minor "was not involved" was admitted to show defendant's consciousness of guilt. In *Rucker*, our Supreme Court held that the *Miranda* safeguards are not required at the booking stage, since *the information elicited is used for purposes of internal jail administration and cannot be put to any incriminatory use* (*id.*, p. 389). Defendant argues that, therefore, *Rucker* holds by inference that all statements made during the booking process cannot be admitted on the substantive criminal charges. We do not agree. *Rucker* is inapposite here. Defendant's statement here was spontaneous and volunteered and was not made in response to any interrogation. Accordingly, it was admissible (*People* v. *McDaniel* (1976) 16 Cal.3d 156, 172 [127 Cal.Rptr. 467, 545 P.2d 843]). ■ Assuming, however, that defendant's interpretation of *Rucker* is correct, we hold that since volunteered statements during the booking process do not affect the integrity of the factfinding process, *Rucker* should apply prospectively only to cases tried after the decision (Jan. 29, 1980; cf. *People* v. *Kaanehe, supra*, 19 Cal.3d, p. 10; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221]; *Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]). Even assuming, without conceding, that *Rucker* is retroactively applicable here, given the unequivocal identification of defendant by the two victims and the overwhelming evidence, a review of the entire record indicates that the admission of the statement was harmless under either the reasonable probability test of *People* v. *Watson* (1956) 46 Cal.2d 818 [299 P.2d 243], or the beyond a reasonable doubt standard of *Chapman* v. *Cali-*

---

[5]As *Rucker* was decided January 29, 1980, after the instant trial, defense counsel's failure to object does not preclude us from considering the issue (*People* v. *Williams* (1976) 16 Cal.3d 663, fn. 4, at p. 667 [128 Cal.Rptr. 888, 547 P.2d 1000]). *Rucker* did not indicate whether it was to be applied retroactively or only prospectively.

*fornia* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].[6]

■ Finally, defendant contends that the People's argument at the sentencing hearing and the trial court's imposition of sentence in accordance with the People's recommendation was a violation of the principles of *In re Lewallen, supra*, 23 Cal.3d 274. *Lewallen* held, at page 281, that a court's sentencing discretion is not limited by rejected offers made prior to trial and that under the appropriate circumstances, a defendant may receive a more severe sentence following trial than he would have received if he had pled guilty. The court also noted, at page 281, that just as a trial judge was precluded from offering an accused, in return for a guilty plea, a more lenient sentence than he would impose after a trial, so is he precluded from imposing a more severe sentence because the accused elects to proceed to trial. Defendant has not established any *Lewallen* issue here.

Defendant also maintains that the court considered only the factors offered by the prosecution in sentencing her to the mitigated term of 16 months in prison for each offense and staying the sentence on the second (burglary) count, the stay to become permanent on completion of the term for the grand theft count. The record reveals that defendant was eligible for probation but had two priors, including one as a juvenile in 1976, a drug problem, and a bad record as to prior probation and appearances at the instant proceedings. Her counsel acknowledged defendant's heroin problem, sought probation and a commitment to a residential drug program with a minimum of nine months, emphasized the nonviolent nature of the instant and the priors, the relatively small amount of the grand theft, that defendant was not the principal perpetrator of the offenses involved, her youth (22) and recent efforts at rehabilitation. Contrary to defendant's argument, the court considered all of the above factors and *did not base its sentence solely upon the recommendation of the People.* The court concluded that on the basis of defendant's past performance on bail or OR release, she would be a bad risk for the recommended drug treatment program, which had no locked doors. Thus, the court concluded that incarceration was the proper sentence, rejected the aggravating factors, sentenced defendant

---

[6]Both tests are used here since in *Rucker, supra*, the majority of four concluded that the applicable test was *Watson, supra*, while the minority of three concluded that the applicable test was *Chapman, supra*. All seven agreed that a *Rucker* error was prejudicial and reversible where, as here, the information was used to show consciousness of guilt.

to the mitigated term because of her youth and recent efforts at rehabilitation, and also stayed the sentence on the second count. Under all of these circumstances, we do not think that the trial court abused its sentencing discretion (cf. *People* v. *Jackson* (1980) 103 Cal.App.3d 635, 639 [163 Cal.Rptr. 115]).

The judgment is affirmed.

Rouse, J., and Smith, J. concurred.

A petition for a rehearing was denied January 16, 1981, and appellant's petition for a hearing by the Supreme Court was denied March 11, 1981.