# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: MARCH 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0152-MR

JAMES GARRIGUS                                              APPELLANT

V.                        ON APPEAL FROM GRAYSON CIRCUIT COURT
HONORABLE BRUCE BUTLER, JUDGE
NO. 19-CR-00051

COMMONWEALTH OF KENTUCKY                            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

James Garrigus entered a conditional guilty plea to murder for the death of his girlfriend's baby and received a 30-year sentence, retaining the right to appeal the Grayson Circuit Court's denial of his motion to enforce a previously-offered, more favorable 20-year plea bargain. The 20-year offer was withdrawn by the Commonwealth before Garrigus accepted it or otherwise acted upon it. Garrigus argued below that he had waived his right to a speedy trial in reliance that the 20-year offer would remain open until the next status conference and thus was entitled to its benefit. Following a hearing on Garrigus's motion to enforce the withdrawn offer, the trial court found that he had not shown reliance on the 20-year offer to his detriment or provided any valid

consideration exchange for the offer and therefore the Commonwealth was free to withdraw the offer at any time. We affirm.

## I. Facts and Procedural Background

In December 2018, Garrigus beat his girlfriend's 23-month-old son to death because the baby threw up and did not eat the eggs Garrigus had cooked for him. His two biological children witnessed the incident and recalled its details to investigators.

The sole issue on appeal concerns the applicability of contract law principles in the plea-bargaining context and whether the trial court correctly denied Garrigus's motion to enforce the Commonwealth's withdrawn 20-year offer. In February 2019, Garrigus was indicted for the baby's murder, arraigned, and pled not guilty. At an April 2019 status conference, the trial court continued the case at Garrigus's request to allow him time to review discovery. At the next status conference in July 2019, Garrigus again asked the court to continue his case for more time to review discovery; the Commonwealth stated it wished to set the case for trial. Garrigus responded that he was not ready to set his case for trial. The trial court told Garrigus it would grant him one more continuance but that the case would be set for trial at the next status conference which, at Garrigus's request, was set for October 15, 2019.

On October 15, 2019, Garrigus, unaware that a plea offer had been filed the day before, thus requested a trial date. The Commonwealth informed him and the court that it had filed an offer the day before: 20 years for murder.

2

Garrigus asked to continue the case to give him time to consider the offer. The trial court provided November 5, 2019 as the next available date but granted Garrigus's request to push it back to November 19, 2019. The Commonwealth commented, "If this isn't realistic we can go ahead and set a trial date. I don't want to waste anybody's time. I mean if he wants to consider it seriously, I'm happy to go to the 19th." Garrigus responded, "Well I think let's go to the 19th." Thus, the case was continued until November 19.

On October 24, 2019, the Commonwealth filed a notice revoking the 20-year offer. Apparently, the offer had been extended by the Grayson County Commonwealth's Attorney's First Assistant without reaching a conclusive agreement with the Commonwealth's Attorney as to the severity of Garrigus's punishment. On November 8, 2019, the Commonwealth's Attorney sent Garrigus's attorney a letter of apology for the miscommunication within his office and for putting defense counsel in an untenable position. The letter in essence stated that the Commonwealth's Attorney disagreed with the 20-year offer made and that was the basis for its revocation.

The day before the scheduled November 19 conference, Garrigus filed a motion to enter guilty plea and attached the 20-year offer that had been withdrawn nearly a month before. The Commonwealth informed the trial court that it had revoked the 20-year offer; nonetheless, Garrigus stated that he wished to accept the revoked offer. Noting that the offer had been revoked, the court asked if the case should be set for trial, to which Garrigus responded affirmatively, but indicated that he would like a hearing on the issue of offer

3

revocation. The court granted Garrigus's request for a hearing on the issue and then set the case for trial on June 10-12, 2020 and scheduled a final status conference for May 5, 2020.

On May 5, 2020, the court remanded the case from the trial docket due to COVID-19 and set a status conference for June 16, 2020. On June 16, 2020, Garrigus asked for, and was granted, continuance of the case until August 18, 2020, stating that he would likely need a trial date set then. At the August 18 conference, the court offered December 7-10, 2020 as a trial date but on Garrigus's request for a date farther out, the case was set for trial for March 9-12, 2021.

On November 6, 2020, the Commonwealth filed a new offer of 30-years' imprisonment for murder, which included Garrigus's right to appeal the issue of whether the prior 20-year offer was revoked prior to acceptance. Garrigus accepted the Commonwealth's 30-year offer and filed a motion to enter a conditional guilty plea. He then filed a separate motion to enter a plea, asking the court to enforce the withdrawn 20-year offer on the basis that he had waived his right to a speedy trial in detrimental reliance on it and thus was entitled to its benefit, citing *Workman v. Commonwealth*, 580 S.W.2d 206, 207 (Ky. 1979) ("[t]he question is not whether the Commonwealth's bargain was wise or foolish. The question is whether the Commonwealth should be permitted to break its word[]"), *overruled on other grounds by Morton v. Commonwealth*, 817 S.W.2d 218 (Ky. 1991). Garrigus emphasized that he reasonably believed the offer would remain open until November 19 and had he

4

realized it was a "ticking time-bomb that must be accepted as soon as possible," he would have consulted with his counsel immediately. In response, the Commonwealth pointed out that Garrigus was not entitled to any plea offer at all, nor had he asserted or shown a desire for a speedy trial; consequently he could not argue that he had detrimentally relied on the 20-year offer or that the one-month continuance from October 15 until November 19 sufficed as valid consideration.

In March 2021, the trial court considered Garrigus's motion to enforce the withdrawn offer and his motion to enter a guilty plea. The court accepted Garrigus's 30-year conditional guilty plea and sentenced him accordingly. By separate order, the court denied Garrigus's motion to enforce the 20-year offer, finding that Garrigus had provided no consideration to support an options contract, no conditions existed in the offer for Garrigus to perform thereby creating detrimental reliance and the Commonwealth validly revoked the offer before acceptance. This appeal followed.

## II.  Analysis

Garrigus argues that the trial court should have granted his request for specific enforcement of the Commonwealth's 20-year offer. He asserts that the Commonwealth's 20-year offer created a binding irrevocable options contract, requiring the offer to remain open until November 19, and that the trial court erred in finding that he had not offered any consideration in exchange. Thus, he contends that the Commonwealth's revocation of the offer before November 19 was a breach of the options contract.

5

Garrigus notes that the trial court's order incorrectly found that the purpose of the continuance from October 15 to November 19 was for the defense to review discovery, rather than to allow him time to consider the offer. Garrigus states he was expecting to pick a trial date at the October 15 conference since the Commonwealth had not extended any offers. He claims he was surprised to learn of the Commonwealth's 20-year offer, and that the sole purpose of the continuance until November 19 was to give him time to consider it. Garrigus maintains he was prepared to accept the offer on November 19, but the Commonwealth had already withdrawn it. Garrigus contends that by not picking a trial date on October 15, in reliance on having until November 19 to contemplate the plea offer, his forbearance of a speedy trial was valid consideration to create an options contract.

The Commonwealth concedes that the portion of the trial court's order finding that discovery was the purpose for the continuance from October 15 to November 19 was mistaken, noting that discovery was not discussed at the October 15 conference. Nevertheless, the Commonwealth argues that the remainder of the trial court's order correctly found that the 20-year offer was validly revoked prior to acceptance and that Garrigus had not relied on the offer to his detriment because no conditions were contained in the offer for him to rely on; specifically, no written or verbal promise by the Commonwealth to keep the offer open for any period of time. Thus, despite the trial court's incorrect finding regarding discovery, the Commonwealth asserts that the record shows that Garrigus offered no consideration for, or experienced any

6

detrimental reliance on, the plea offer before it was revoked. *See McCloud v. Commonwealth*, 286 S.W.3d 780, 786 n.19 (Ky. 2009) ("an appellate court may affirm a lower court for any reason supported by the record[]").

"[T]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." Restatement (Second) of Contracts § 17 (1981). "An option contract is a promise which meets the requirements for the formation of a contract and limits the promisor's power to revoke an offer." Restatement (Second) of Contracts § 25 (1981). "It is well settled that an option is not binding as a contract where there is no consideration, unless it is accepted within the time limit and before the offer is withdrawn." *Combs v. Turner*, 304 Ky. 179, 181, 200 S.W.2d 288, 289 (1947).

As this Court has noted, plea agreements are constitutional contracts involving "[t]he due process right to a fair trial; the right against self-incrimination; the right to remain silent; the due process right to fundamental fairness." *Commonwealth v. Reyes*, 764 S.W.2d 62, 64 (Ky. 1989). The *Reyes* court further noted,

> It seems obvious that if the state makes a promise to an accused and the accused takes no action in reliance on the promise, the state may withdraw the offer. No agreement has been reached. There is nothing to enforce. The prosecutor's right to withdraw is equal to his right to withhold an offer. No defendant has a constitutional right to plea bargain. The prosecutor may engage in it or not in his sole discretion. If he wishes, he may go to trial. *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). If the prosecutor makes a plea bargain offer and withdraws it before it is accepted or detrimentally acted upon by the defendant, the defendant will not be heard to complain that his constitutional rights to due process

7

and effective counsel have been violated. *Government of the Virgin Islands v. Scotland,* 614 F.2d 360 (CA 3, 1980).

> However, if the offer is made by the prosecution and accepted by the accused, either by entering a plea or by taking action to his detriment in reliance on the offer, then the agreement becomes binding and enforceable. Constitutional as well as contractual rights become involved. . . . A case to compare is *Adkins v. Commonwealth,* Ky.App., 647 S.W.2d 502 (1983) where the defendant never accepted the state's offer and had taken no action in reliance upon it. "Here, because appellant never personally accepted the Commonwealth's offer, it remained an offer and was revocable by the Commonwealth at any time." The element of estoppel was alluded to in *Government of Virgin Islands, supra.* "When, however, the defendant detrimentally relies on the government's promise, the resulting harm from this induced reliance implicates due process guarantees."

*Id.* at 64–65.

The question of whether a valid and enforceable contract was made is one of fact, *Hickey v. Glass,* 149 S.W.2d 535, 536 (Ky. 1941), and the trial court's factual findings cannot be set aside unless clearly erroneous.  CR[1] 52.01.  Undisputedly, Garrigus did not accept the Commonwealth's 20-year offer before it was withdrawn.  Contrary to Garrigus's assertion, nothing in the Commonwealth's 20-year written offer indicated that the offer would remain open for a certain period of time and the Commonwealth did not expressly promise as much during the October 15 conference.  At the October 15 conference, in response to Garrigus's request for more time to consider the offer, the Commonwealth stated: "If this isn't realistic, we can go ahead and set a trial date. I don't want to waste anybody's time. I mean if he wants to consider it seriously, I am happy to go to the 19th."  The Commonwealth's

---

[1] Kentucky Rules of Civil Procedure.

8

comment was not an implicit agreement to hold the 20-year offer open until November 19; rather, it was an explicit agreement not to set the case for trial that day and to reconvene on the 19th. A meeting of the minds is "the most essential factor to constitute a binding contract." *Commonwealth v. Jackson,* 529 S.W.3d 739, 744 (Ky. 2017) (citation omitted). Without a meeting of minds on the revocability of the offer, no options contract was created requiring the Commonwealth to hold the offer open until November 19. The language of the plea offer and the exchange between counsel at the October 15 status conference does not unequivocally demonstrate mutual assent that the plea offer would remain on the table for a guaranteed period of time. And without consideration on Garrigus's behalf, the Commonwealth could withdraw the offer at any time before Garrigus notified it that he intended to accept it.

Turning to the principles of consideration and estoppel, the record shows that Garrigus did not rely to his detriment by continuing the case for another month while he considered the offer, especially given that since his indictment, Garrigus never expressed a desire for a speedy trial, or filed a motion requesting one. While a speedy trial is guaranteed to criminal defendants by virtue of the Sixth Amendment to the United States Constitution and the Kentucky Constitution, Section 11, the defendant bears the responsibility to assert his right to a speedy trial. *Goncalves v. Commonwealth,* 404 S.W.3d 180, 202 (Ky. 2013).

> In determining whether a criminal defendant has been deprived of his right to a speedy trial, we consider four factors: (1) the length of delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. We

9

> regard none of the four factors ... as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. Bearing in mind that a fundamental right is involved, we must engage in a careful balancing process.

*Smith v. Commonwealth*, 361 S.W.3d 908, 914 (Ky. 2012) (internal quotations and citations omitted).

The record reflects that Garrigus never filed a motion for a speedy trial or asserted that right; instead, he repeatedly requested and acquiesced to numerous continuances. *See Henderson v. Commonwealth*, 563 S.W.3d 651, 665 (Ky. 2018) ("[i]f a defendant acquiesces in a delay, he cannot be heard to complain about the delay[]") (citation omitted). At the October 15 conference, for example, Garrigus could have simultaneously asked for a trial date while he contemplated the plea offer, had he wished to assert his right to a speedy trial. Moreover, he took no immediate action to set a trial date after the Commonwealth withdrew its offer; in fact, when offered a trial date in December 2020, Garrigus asked to go to March 2021 instead.

Garrigus argues that detrimental reliance aside, the delay of his constitutional right to a speedy trial sufficed as the requisite consideration for purposes of contract formation. He claims that both sides agreed to a bargained-for exchange: the Commonwealth agreed to hold its offer open until November 19 and Garrigus agreed to seriously consider the offer and forbear his right to a speedy trial. However, our review of the record shows that the Commonwealth did not expressly promise to keep the offer open for any period of time. Given that Garrigus was not entitled to the Commonwealth's 20-year

10

plea offer, or any plea offer at all, his better course of action would have been to swiftly act on the generous offer while it remained outstanding. Without acceptance, before revocation or detrimental reliance by Garrigus, no contract was formed and the Commonwealth was free to withdraw its offer at any time. "[A] plea bargain agreement which has not been consummated is not enforceable unless there has been a reliance on the bargain by the defendant which has resulted in detriment to him[.]" *Cope v. Commonwealth*, 645 S.W.2d 703, 704 (Ky. 1983). Here, the evidence was sufficient to support the trial court's determination that the 20-year plea offer was not enforceable between the parties. As a result, the trial court did not err by denying Garrigus's motion to enforce the withdrawn offer.

### III.    Conclusion

For the foregoing reasons, the Grayson Circuit Court's judgment is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Aaron Reed Baker
Kathleen Kallaher Schmidt
Assistant Public Advocates
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Aspen Caroline Carlisle Roberts
Assistant Attorney General

11