[Crim. No. 35095. Second Dist., Div. Five. July 6, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIAM THOMAS KOZEL, Defendant and Appellant.

512

514

COUNSEL

Norman W. de Carteret for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, William R. Pounders and Sandy R. Kriegler, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

CHOATE, J.*—Appellant was sentenced to state prison for violation of section 187, Penal Code, the murder, second degree, of Robert Edelman, with use of a firearm, and for violation of section 217, of the Penal Code, assault with intent to commit murder of appellant's estranged wife, Elizabeth Kozel, with use of a firearm. He had pleaded not guilty and not guilty by reason of insanity. The jury returned verdicts of guilty to count I, murder, first degree, and count II, assault with intent to commit murder. The jury found the appellant to have been sane at the time of the commission of the offenses. The court denied a motion for new trial, but reduced the murder to second degree and denied probation. For the murder, the court imposed the upper term of seven years, with a two-year enhancement for firearm use. The sentence for the felony assault was one year, consecutive, with a gun use enhancement of eight months. The appeal is from the judgment and order denying a motion for new trial.

FACTS

Appellant arrived at Robert Edelman's residence on August 10, 1978, armed with a handgun. He entered to find Edelman and Elizabeth Kozel in the dining area, and fired the pistol at Mrs. Kozel. The bullet struck an adjacent wall and she escaped through a window. Then other shots were fired and Edelman, wounded by two or three of them, was killed by a bullet entering the heart. The coroner found powder burns to Edelman's forearm, chin and neck from shots fired from a range of 18 inches or less.

Appellant is an ex-deputy sheriff and a lawyer. He had been treated by a psychiatrist for months before the shooting. He and his wife were, at the time of the incident, parties to a dissolution action. His testimony was that he began to drink Scotch and to take drugs in the afternoon of August 10, 1978, and was drunk by 7 p.m. He had his pistol with him when he drove to his wife's home to resolve a dispute over custody of their children. Unable to find her there, he drove to Edelman's home. He entered Edelman's door, he recalled, and fired the pistol without intent to kill. After the shooting he left the scene and drove to Wisconsin, where he surrendered to police.

---

*Assigned by the Chairperson of the Judicial Council.

Three psychiatrists testified for appellant. Two stated opinions that at the time of the incident he lacked the substantial capacity to appreciate the criminality and wrongfulness of his conduct and could not conform his conduct to the requirements of law. Another found a diminished capacity to premeditate, deliberate, or harbor malice. Two psychiatrists in rebuttal testified that appellant was able to harbor malice, form the intent to kill and to deliberate, and premeditate.

## DISCUSSION

### Concerning Prosecutor's Misconduct

Appellant cites a number of instances of the prosecutor's alleged misconduct. No objection was raised to some of these acts of claimed misconduct and they would, therefore, not constitute grounds for appeal. (*People* v. *Green* (1980) 27 Cal.3d 1, 27 [164 Cal.Rptr. 1, 609 P.2d 468].) We discuss and evaluate them, however, because of appellant's claims of defense counsel's incompetency.

■ The first contention is that by the presentation of modified *California Jury Instruction, Criminal* (CALJIC) forms to the court and counsel, without indicating that the forms had been modified, the district attorney misled the court with false headings and titles. He cites this as reversible misconduct. He further complains that a non-CALJIC instruction is contrary to public policy. The argument ignores what is a common practice of trial judges and trial lawyers, the results of which can be seen in most records, that is modifying standard CALJIC instructions by obliterations, interlineations and revisions. It is doubtful that what appear to be patent omissions and deletions would mislead. Though a better procedure would have been to label modifications of standard instructions, there is no indication in the record that anyone was misled. There is nothing sacrosanct about CALJIC instructions and there is no violation of public policy, in the giving of an instruction which does not come from that source. (*People* v. *Eckstrom* (1974) 43 Cal.App.3d 996, 1006 [118 Cal.Rptr. 391].)

■ Appellant asserts several instances of misconduct during closing argument. One such, he claims, was the reference by the District Attorney to the testimony of People's witness, Bruce Hamilton. Three days before the killing appellant declared to Hamilton his intention to get rid of Mrs. Kozel, gain custody of the children and serve his time, five to seven years in prison. The prosecutor twice referred to the remark,

without objection, as an indication of premeditation of the killing of Mrs. Kozel. ■ Failure to object to the remarks precludes them as an issue on appeal unless the case is closely balanced or unless their harmful effect could not be cured by retraction or the court's admonition. We find no exception existed here. (*People* v. *Green, supra,* 27 Cal.3d 1, 27.) ■ The remarks do not constitute misconduct because they referred to the state-of-mind of appellant, were relevant and within the evidence produced. (*People* v. *Bolton* (1979) 23 Cal.3d 208 [152 Cal.Rptr. 141, 589 P.2d 396].)

■ The prosecutor in his summation argued that appellant had told Bruce Hamilton that he knew the "accurate penalty" for a certain crime. Appellant had not used the words "accurate penalty" in the conversation with Hamilton. There was objection. The jury was admonished to disregard the remark. Appellant argues that the prosecutor's misstatement of the evidence may have led jurors to believe that the prosecutor was affirming as accurate that appellant's sentence, if he were convicted would be only five to seven years in prison. The court's admonishment is presumed to have cured the error. (*People* v. *Hardy* (1948) 33 Cal.2d 52, 61 [198 P.2d 865].) In addition to the admonition, the court later read CALJIC No. 17.42, the instruction telling the jury that penalty or punishment was not to be discussed or considered by them, and must not in any way affect their verdict. We find that appellant was not prejudiced by the statement.

All of the complained-of comments including some we have not mentioned, were brief, insignificant in the light of the entire argument, and do not raise an inference that they contributed to the verdict, or that it is reasonably probable that a result more favorable to the appellant would have been forthcoming but for the remarks having been made. (*People* v. *Meneley* (1972) 29 Cal.App.3d 41, 62 [105 Cal.Rptr. 432]; *People* v. *Reyes* (1974) 12 Cal.3d 486, 506 [116 Cal.Rptr. 217, 526 P.2d 225].)

■ Appellant complains that on direct examination of an officer witness by the prosecutor, it was elicited that after appellant had been advised of his *Miranda* rights, he was asked whether he wished to waive those rights and appellant answered, "No." This was misconduct, he argues, an attempt to produce for the jury an inference of guilt from appellant's refusal to make a statement. However, a reading of the record discloses that the conversation with the officer was related not on direct but on cross-examination. Where error, if it was error, is

brought into the record by appellant, he may not complain of it on appeal. (*People* v. *Moran* (1970) 1 Cal.3d 755, 762 [83 Cal.Rptr. 411, 463 P.2d 763].) We observe that the results of the cross-examination of the officer were harmless. The testimony revealed a short interrogation, of a lawyer-suspect with no effort on the part of the police to extract a statement by persistent questioning. The circumstances would not have been sufficient in reasonable minds to convert the refusal to waive the right to remain silent into a tacit admission of guilt. (*People* v. *Meneley, supra*, 29 Cal.3d 41, 58.)

*Concerning Allegations of Judicial Misconduct*

■ Appellant urges that the court was in error when, from the bench, at a recess just after the close of the People's case, it told facts of the case to a class of children which had heard some of the evidence that morning in court. A newspaper article concerning the discussion with the students was published the next day attributing certain comments to the court. After a discussion with counsel in chambers concerning the incident the court took the bench, told the jury that there had been an article in the Thousand Oaks News Chronicle, and reminded them of the admonishment it had given at the beginning of the trial, that they were not to read or view or listen to news accounts of the trial. The court later inquired of jurors whether any of them had read news articles about the case. The response was negative. The appellant cites as judicial misconduct, the court's comments to the visiting students and the court's first mentioning to the jury its admonition and the news article before inquiring whether jurors had read it. Appellant also contends that the judge's recess remarks to the school class reveal that he was not impartial. He argues that the judge related facts from the People's side of the case and ignored the appellant's opening statement and thus revealed his bias.

There is no record of the talk between the judge and the spectators. In chambers with counsel, the trial judge read from the news article as follows: "'What happens to the little girl,' the children wanted to know. [Judge] Brandler told them, 'that depends on whether or not her father is convicted, how long he spends in prison if convicted.' He told them, 'It depends on what he is found guilty of.'" The judge then said to counsel, "The court did not make that statement," apparently referring to the last sentence he had read.

The talk with the school class, off of the record, is illustrative of the troubles which can beset a trial judge if he or she elects to comment outside of the record about a case in progress. He or she may be misquoted or may convey some meaning not intended. But in the instant case we find no intemperate or inflammatory judicial statement. Nor was there any indication to the jury that the court had prejudged guilt. There is no violation of the canons of California Code of Judicial Conduct, Canon 2A, which provide that a judge should "conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Though we find no bias expressed, even had the court believed appellant guilty, the issue would then become whether appellant was prejudiced by the remarks or by the judge's state of mind. (*People* v. *Martinez* (1978) 82 Cal.App.3d 1, 16 [147 Cal.Rptr. 208].) We find no such prejudice. ■ That there was news coverage of the trial does not justify a mistrial. (*People* v. *Lanphear* (1980) 26 Cal.3d 814, 835 [163 Cal.Rptr. 601, 608 P.2d 689], vacated *California* v. *Lanphear* (1980) 449 U. S. 810 [66 L.Ed.2d 13, 101 S.Ct. 57], reinstated *People* v. *Lanphear* (1980) 28 Cal.3d 463 [171 Cal.Rptr. 505, 622 P.2d 950].)

*Concerning Instructions*

■ Appellant assigns as error the instructions on transferred intent applied to murder (CALJIC No. 8.65) and to assault with intent to commit murder (CALJIC No. 9.06). The evidence on the subject is that appellant entered Edelman's condominium after having first broken into Mrs. Kozel's apartment, apparently in search of her. Upon entry into Edelman's home, he fired his first shot at Mrs. Kozel and missed. Two shots followed. Then there was a pause and three more shots. One supposition argued by the People from this evidence was that the two shots together were fired at Mrs. Kozel as she escaped through the window, but those bullets struck Edelman who was nearby. The jury was instructed by CALJIC No. 17.31 that they were to "disregard any instruction which applies to a state of facts which you determine does not exist." And while that advisement does not render an improper instruction proper (*People* v. *Saddler* (1979) 24 Cal.3d 671,. 684 [156 Cal.Rptr. 871, 597 P.2d 130]), we find that the instruction was justified by the evidence, and the instruction was, therefore, proper. (*People* v. *Sears* (1970) 2 Cal.3d 180 [84 Cal.Rptr. 711, 465 P.2d 847]; *People* v. *Rodriguez* (1969) 274 Cal.App.2d 487 [79 Cal.Rptr. 187].)

■ Appellant complains that the instructions were inadequate to inform the jury of the necessity that they find concurrence of act and

specific intent to kill in order to return murder or assault with intent to commit murder verdicts. We find, however, that the jury was properly instructed on the subject. In CALJIC No. 8.20, instructing upon deliberate and premeditated murder, the court said, "If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill. . . ." This and other instructions expressed the need for joint operation of act and intent in both crimes. There was no need to repeat a principle once stated. (*People* v. *Welch* (1972) 8 Cal.3d 106, 119 [104 Cal.Rptr. 217, 501 P.2d 225]; *People* v. *Slocum* (1975) 52 Cal.App.3d 867, 892 [125 Cal.Rptr. 442].) *People* v. *Benjamin* (1975) 52 Cal.App.3d 63, 84 [124 Cal.Rptr. 799], involved a refusal of the trial court to give CALJIC 3.31, which instructs that there must exist a union of act and specific intent to kill in the crime of premeditated murder. The reviewing court found that the jury was properly instructed on the required intent. It commented that the evidence of four shots fired into the victim's back and buttocks at close range, "permits of no other interpretation than that appellant entertained an intent to kill." While the facts in the instant case are similar, we do not have to go so far as the *Benjamin* court did, since the present instructions on state of mind and intent are ample.

 Appellant presented a diminished capacity defense based upon his intoxication from alcohol, drugs and his psychiatric problems. He argues that it was reversible error, therefore, for the court to have given CALJIC No. 4.20 which was derived from Penal Code section 22. That instruction reads: "Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition.' This provision of the law means that if the evidence shows that the defendant was voluntarily intoxicated when allegedly he committed the offenses charged in Counts I and II, his intoxication is not a defense to such charges."

*People* v. *Spencer* (1963) 60 Cal.2d 64 [31 Cal.Rptr. 782, 383 P.2d 134] and *People* v. *Ford* (1964) 60 Cal.2d 772 [36 Cal.Rptr. 620, 388 P.2d 892] ruled that the giving of this instruction was error in cases involving specific intent crimes with evidence of voluntary intoxication as a diminished capacity defense. But it also has been held, where there is a diminished capacity intoxication defense, that the instruction is not necessarily error. (*People* v. *Conley* (1968) 268 Cal.App.2d 47, 52 [73 Cal.Rptr. 673].) It is error to give CALJIC No. 4.20 alone where the evidence justifies diminished capacity instructions (*People* v. *Vasquez*) (1972) 29 Cal.App.3d 81 [105 Cal.Rptr. 181]). But if the jury has been

fully informed regarding the effect of intoxication upon the capacity to form specific intent, there is no reversible error in giving the instruction. (*People* v. *Patterson* (1979) 88 Cal.App.3d 742, 753-754 [152 Cal.Rptr. 183].)

The jury was, indeed, fully informed on the subject. They heard CALJIC No. 8.41 which advised them inter alia, that there is no malice aforethought if, due to intoxication, a defendant does not have the capacity to attain that mental state. Additionally, CALJIC No. 8.48 instructed that there is no malice aforethought or intent to kill if a defendant did not have the mental capacity by reason of intoxication to harbor malice or to form an intent to kill. And CALJIC No. 8.77 told them that if they held a reasonable doubt as to defendant's mental capacity to form the mental state to commit premeditated murder or to form the intent to kill, he could not be found guilty of murder first degree or assault with intent to commit murder. Also, the Wells-Gorshen Instruction, CALJIC No. 3.35, required that they "[T]ake all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged."

We adopt the view we took in *People* v. *Rhodes* (1971) 21 Cal.App. 3d 10, 22 [98 Cal.Rptr. 249], where a Penal Code section 22 instruction was also given. Thorough reading of the instructions given in the instant case, as in *Rhodes*, reveals that there is "little possibility" that there was prejudicial error as a matter of law.

Appellant's next contention is that CALJIC No. 4.21 should have mentioned specific intent to kill as a requirement of murder and assault with intent to commit murder. That instruction, as it was given, only instructs that intent to kill is a necessary element of the crime of voluntary manslaughter. It tells the jury to consider appellant's state of intoxication in determining whether intent to kill existed at the time of the act and to find that it did not exist if there is reasonable doubt as to capacity to form the intent. But, contrary to the appellant's urging, we find that the inclusion of murder and assault with intent to commit murder in CALJIC No. 4.21 was unnecessary, because the jury was otherwise completely instructed about intoxication as it affects the mental state required for those crimes. (*People* v. *Rhodes, supra,* 21 Cal.App.3d 10, 21.)

▄▄ Appellant next complains that the court erred in not including the language of the third paragraph of the standard form of CALJIC No. 8.77: "... [I]f you find that the defendant's mental capacity was diminished to the extent that you have a reasonable doubt whether he was able to form the mental states constituting either express or implied malice aforethought, you cannot find him guilty of murder of either the first or second degree." He urges that the omitted words are the only instruction which would have told the jury, "You cannot find him guilty of murder if you find diminished capacity." However, the instructions given covered the requisite states of mind for the respective crimes and properly advised the jury as to the applicable law. There was no need to repeat them in other forms. (*People* v. *Partlow* (1978) 84 Cal.App.3d 540, 559 [148 Cal.Rptr. 744].)

▄▄ Referring to his conviction of count II, assault with intent to commit murder, appellant complains of the instructions which defined malice aforethought, CALJIC No. 8.11 (1974 Revision) and second degree murder, CALJIC No. 8.31 (1974 Revision). He argues that those instructions permitted the jury to find him guilty of assault with intent to commit murder, upon Mrs. Kozel, without the jury finding that he had the intent to kill. Appellant cites *People* v. *Martinez* (1980) 105 Cal.App.3d 938 [165 Cal.Rptr. 11], where the court reversed a conviction of assault with intent to commit murder, ruling that the giving of those instructions without excluding implied malice as an element of the crime was error. The reasoning there was that the assault to commit murder charge required an intent to kill, and the jury, possibly confused by conflicting instructions, could have found an implied malice, not requiring that intent. As in the present case, the *Martinez* trial court did not instruct per CALJIC No. 4.21 on intent to kill as an element of assault with intent to commit murder.

The malice defined in CALJIC No. 8.11 is express or implied. The express exists "[W]hen there is manifested an intention unlawfully to kill a human being." The implied malice arises "[F]rom an act involving a high degree of probability that it will result in death, which act is done for a base, antisocial purpose and with a wanton disregard for human life by which is meant an awareness of a duty imposed by law not to commit such acts followed by the commission of the forbidden act despite that awareness." Implied malice is again so defined in instruction, CALJIC No. 8.31, regarding murder, second degree. It instructs that it is not necessary, in that type of murder second degree where the killing is the result of such an act, that the defendant intend death of the victim.

*People* v. *Murtishaw* (1981) 29 Cal.3d 733, 764-765 [175 Cal.Rptr. 738, 631 P.2d 446], dealing with a conviction of assault with intent to commit murder, approves of *Martinez* and finds error because, "To instruct on implied malice in that setting, therefore, may confuse the jury by suggesting that they can convict without finding a specific intent to kill." Thus in the present case, it was error not to have limited instructions on implied malice to the murder charge.

The error is, however, not prejudicial. The evidence respecting the murder charge led the jury to believe that the appellant intended to kill Edelman, and they returned a verdict consistent with that finding. The assault upon Mrs. Kozel made at the same time, with the same weapon, is indistinguishable but for its result. Like the court in *People* v. *Murtishaw, supra,* 29 Cal.3d at page 765, we find, "It is unconceivable that the jury, having rejected defendant's claim of diminished capacity would find that defendant had no intent to kill."

■ The court's failure to instruct *sua sponte* on attempted voluntary manslaughter as a lesser included offense of assault with intent to commit murder is cited as error. The attorney general agrees that *People* v. *Heffington* (1973) 32 Cal.App.3d 1 [107 Cal.Rptr. 859] requires a *sua sponte* instruction on attempted voluntary manslaughter where there is evidence of an attempted killing without malice. In the instant case there was evidence presented of the lack of appellant's capacity to harbor malice, and we agree that the lesser-included instruction should have been given. However, on count I the jury returned a verdict of first degree murder, an indication that it rejected appellant's diminished capacity defense. This rejection by the jury of appellant's claim of inability to form express malice renders the error harmless. In view of the jury's verdict on count I it is not reasonably probable that the giving of the instruction would have resulted in a verdict more favorable to appellant on count II. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 721 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on a point not here pertinent, in *People* v. *Flannel* (1979) 25 Cal.3d 668, 684, fn. 12 [160 Cal.Rptr. 84, 603 P.2d 1].)

■ The appellant argues that the trial court's refusal to instruct the jury on unconscious acts and unconsciousness was error. The appellant offered two such instructions, CALJIC Nos. 4.30 and 4.31. The first instructs that an unconscious act is not a crime and states, "This rule of law applies only to cases of the unconsciousness of persons of

sound mind, such as somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind." CALJIC No. 4.31 instructs that if a defendant acted as if he were conscious, the jury should find he was conscious unless the evidence raises reasonable doubt as to his consciousness.

There is a division of authorities as to what evidentiary foundation justifies instructions on unconsciousness. One group of cases holds that unsound mental condition cannot be a basis for the defense. In *People v. Sedeno, supra,* 10 Cal.3d 703, 717, for example, the defense of unconsciousness was acknowledged to exist when based upon acts "Committed by a person who because of somnambulism, a blow to the head or similar cause is not conscious of acting and whose act therefore cannot be deemed volitional." (See *People v. Ray* (1975) 14 Cal.3d 20, 25 [120 Cal.Rptr. 377, 533 P.2d 1017].) But other courts, as in *People v. Kitt* (1978) 83 Cal.App.3d 834, 845 [148 Cal.Rptr. 447], have held that unconsciousness is a defense when it results from unsoundness of mind. As to the evidence, appellant's expert witness did testify that he was schizophrenic-paranoid. Appellant testified to ingestion of alchohol and drugs before the shooting. He remembered such details of the crime as going through the door of the Edelman apartment, hearing conversation inside, taking a position with the pistol and firing the shots. His next memory, he testified, was driving his car to Bakersfield. He denied having an intent to kill when he fired the weapon. In testimony of five psychiatrists none stated that appellant had been unconscious. Under either of the approaches to the nature of the defense of unconsciousness there appears in this case to be no evidence deserving of consideration to compel the instructions. (*People v. Flannel, supra,* 25 Cal.3d 668, 686.) A defendant has the burden of producing evidence that he was unconscious if he wishes to rely upon that defense. (*People v. Cruz* (1978) 83 Cal.App.3d 308, 331 [147 Cal.Rptr. 740].) Because the jury in finding first degree murder rejected diminished capacity as a defense, it is patent that they would have done the same to a defense of unconsciousness had it been offered. (*People v. Kitt, supra,* 83 Cal.App.3d 834.) A trial court does not err in refusing to instruct unless substantial evidence has been presented on the subject of the requested instructions. (*People v. Mayberry* (1975) 15 Cal.3d 143, 151 [125 Cal.Rptr. 745, 542 P.2d 1337].) We do not find error in the refusal to give the instructions.

 Appellant's next contention is that the court's instructions on self-defense diverted the jury's full attention from his diminished capacity defense. He points to the comments of the trial court at the motion for new trial, "[t]here was no arguable or rational evidence introduced on the theories of self-defense and heat of passion." He argues that it is error to give an instruction which correctly states a principle of law, but has no application to the facts of the case, and cites *People v. Nunez* (1970) 7 Cal.App.3d 655 [86 Cal.Rptr. 707]. We adopt another rule of that case that the error does not impel a reversal, however, unless it is affirmatively shown that it has prejudiced the defendant and that there is a reasonable probability that absent the error complained of, a verdict more favorable to defendant would have been reached. (*Id.*, at p. 662.) We conclude that self-defense instructions were not error. The coroner's evidence was susceptible of an inference that there was a struggle. The trial judge, when he commented that the self-defense theory was distraction to the jury, said, "[S]ince defense requested and after discussion with the court insisted that the court instruct the jury on the theories of self-defense and heat of passion, the court is legally bound to and therefore did instruct the jury on all theories of the defense supported by any evidence no matter how slight or insignificant." Because the self-defense instructions were requested by him, appellant may not now complain of them on appeal. (*People v. Williams* (1980) 102 Cal.App.3d 1018, 1025 [162 Cal.Rptr. 748].)

The trial judge also remarked that had the jury not been diverted, the evidence on diminished capacity, if properly evaluated by the jury, uninfluenced by the self-defense and heat of passion instructions, would probably have raised a reasonable doubt as to the ability of the defendant to deliberate and premeditate. The court, therefore, reduced the crime to murder, second degree, but found in doing so that the "Defendant was capable of forming the specific intent to kill and that he was capable of harboring malice...."

 Appellant complains of the failure to instruct upon insanity as defined in *People v. Drew* (1978) 22 Cal.3d 333 [149 Cal.Rptr. 275, 583 P.2d 1318], during the guilt phase of the trial. Appellant contends that there had been a waiver of the bifurcation of guilt and sanity phases and that since the phases were tried together, CALJIC No. 4.00 instruction[1] should have been given at the conclusion of the evidence re-

[1]CALJIC No. 4.00 reads: "The defendant has been found guilty of the crimes of murder in the first degree in Count I and of assault with intent to commit murder in Count II. It is now your function to determine the issue raised by the defendant's plea

ceived on guilt. However, the record does not support his contention that there was a waiver. The trial was conducted in two phases, guilt and sanity, pursuant to section 1026 subdivision (a) of the Penal Code. There was simply a stipulation that evidence received in the first phase was to be considered in the sanity phase.

In the guilt phase of the trial there was psychiatric evidence given as to appellant's diminished capacity and two defense doctors testified that appellant lacked substantial capacity to appreciate the criminality and wrongfulness of his conduct or to conform his conduct to the requirements of the law. This evidence was admissible in the guilt phase, under *People* v. *Wetmore* (1978) 22 Cal.3d 318 [149 Cal.Rptr. 265, 583 P.2d 1308] as probative of diminished capacity. Neither *People* v. *Drew, supra,* 22 Cal.3d 333, nor *Wetmore* requires that an instruction pursuant to the *Drew* test be given during the guilt phase. When instruction CALJIC No. 4.00 was given in the sanity phase, the jury, nevertheless, found appellant to be sane. The error, if any, must be found harmless, since it does not appear reasonably probable that a jury would have found appellant not guilty had the instruction been given in the first phase. (*People* v. *Cruz, supra,* 83 Cal.App.3d 308.) We, accordingly, found no prejudicial error.

■ The appellant next complains of the trial court's failure to give CALJIC No. 8.74 which reads: "Before you may return a verdict in this case you must agree unanimously not only as to whether the defendant is guilty or not guilty, but also, if you should find him guilty of an unlawful killing, you must agree unanimously as to whether he is guilty of [murder of the first degree] [or] [murder of the second degree] [or] [[voluntary] [or] [involuntary] manslaughter]." There was no request to give the instruction and it was not given. We have not found authority which requires it to have been given *sua sponte* and failure to give it is not error. The jurors were instructed by CALJIC No. 17.50 that

---

of 'not guilty by reason of insanity.' Such plea now places before you the issue as to whether he was legally sane or legally insane at the time of the commission of the crime. This is the sole issue for you to determine in this proceeding.

"Although you may consider evidence of his mental condition before and after the time of the commission of the crime such evidence is to be considered for the purpose of throwing light upon his mental condition as it was when the crime was committed.

"Mental illness and mental abnormality, in whatever form either may appear, are not necessarily the same as legal insanity. A person may be mentally ill or mentally abnormal and yet not be legally insane.

"A person is legally insane if, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law."

"[i]n order to return a verdict, all twelve jurors must agree to the deci-sion." *People* v. *Aikin* (1971) 19 Cal.App.3d 685, at page 703, footnote 13 [97 Cal.Rptr. 251], disapproved on another point in *People* v. *Lines* (1975) 13 Cal.3d 500, 514 [119 Cal.Rptr. 225] describes failure to give CALJIC No. 8.74 as a minor deficiency. It is not a deficiency in the present case at all, because the verdict forms given to the jurors were instructive in setting out the counts and lesser-included offenses. And, CALJIC No. 17.49 instructed that, "Only one of the possible verdicts may be returned by you as to any particular count. If you all have agreed upon one verdict as to a particular count, the corresponding form is the only verdict form to be signed as to that count." Also, the record shows a polling of the jury. This court finds no basis for disputing the unanimity of the verdict and no error in the failure to give the instruction.

The next instruction complained of was given at appellant's request, thus he may not be heard to argue that it was reversible error. (*People* v. *Williams, supra*, 102 Cal.App.3d 1018, 1025.) We refer to the point, nevertheless, because of appellant's various contentions concerning competency of his counsel. ▮ The error claimed is the giving of instruction CALJIC No. 1.20, which reads as follows: "The word 'willfully', when applied to the intent with which an act is done or omitted and as used in my instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage".

It has been held that giving this instruction is error where the crimes involved require specific intent, but that no prejudicial error results where the jury has been otherwise instructed on specific intent. (*People* v. *Warren* (1959) 175 Cal.App.2d 233, 240 [346 P.2d 64].) The jury in the present case was instructed fully as to the required mental states and intent for the crimes involved. There was no reasonable probability that refusal of the instruction would have contributed to a better result for appellant.

▮ Appellant urges error in the 'failure to give, *sua sponte*, CALJIC No. 2.71.7 (Pre-Offense Statement by Defendant), "Evidence has been received from which you may find that an oral statement of [intent] [plan] [motive] [design] was made by the defendant before the offense with which he is charged was committed. It is your duty to decide whether such a statement was made by the defendant. Evidence of

530

an oral statement ought to be viewed with caution." The court instructed per CALJIC No. 2.71, defining an admission as a "[S]tatement by a defendant, which by itself is not sufficient to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence." The instruction advises the jurors that they are the exclusive judges of whether the statement was made and tells them that an oral admission should be viewed with caution.

The omission of CALJIC No. 2.71.7 was harmless in the circumstances presented by the evidence. The instruction given alerted the jury to the necessity to use caution in evaluating the two potentially damaging preoffense statements offered by the People. Moreover, the record shows that the jury heard appellant testify that he made the statement to Bruce Hamilton, concerning Mrs. Kozel, "I could kill her or blow her up or something like that. I think I said, 'I'll kill her.' I don't remember saying I'll blow her up, I think I was saying, 'I'm so mad I could kill.'" A cautionary instruction specifically applied to a preoffense statement would not appear critical in the face of that evidence.

Hamilton testified, too, that appellant said he would get rid of his wife, gain custody of the children and take his five to seven years. When asked, while testifying, whether he had said this to Hamilton, appellant replied, "I don't believe so, because on August 4th when I saw him I only had one drink." The jury was thus presented with partial confirmation of appellant's conversation with a friend, someone who apparently had no motive to lie. The instruction that evidence of an oral admission is to be viewed with caution is to assist the jury in determining if the statement was, in fact, made. (*People v. Beagle* (1972) 6 Cal.3d 441, 456 [99 Cal.Rptr. 313, 492 P.2d 1].) Whether evidence was given by witnesses who were friendly to the accused is a factor to be considered in determining whether the failure to give cautionary instructions resulted in prejudice. (*People v. Lopez* (1975) 47 Cal.App. 3d 8, 13 [120 Cal..Rptr. 562].) We find that the definition of admission and the cautionary instruction given in CALJIC No. 2.71 were adequate to advise the jury to utilize caution in receiving the statements. The error was harmless. (*People v. Beagle, supra.*)

■ The court's instruction to the jury per CALJIC No. 2.62[2] is claimed to be error. Appellant contends that telling the jury that an ad-

[2]CALJIC No. 2.62: "It is a constitutional right of a defendant in a criminal trial that he may not be compelled to testify. Thus the decision as to whether he should tes-

verse inference could be drawn if it found that appellant failed to explain or deny facts which he could reasonably be expected to explain or deny was error, because there were no facts in the People's case defendant failed to explain which were in his particular knowledge. He cites *People v. Saddler, supra*, 24 Cal.3d 671, which found the instruction was in error, but not prejudicially so in the circumstances of that case.

The People's contention is that the appellant's lack of memory was selective. He recalled leaving his own home, but did not remember his stopping to break-in at Mrs. Kozel's home before his arrival at the shooting scene. He remembered having carried his pistol, arriving at Edelman's home, parking his car at the rear, and that he intended no harm to either victim. He recalled pushing open the door and walking into the house, aiming a shot at Edelman and firing the shots. He did not recall what he was shooting at, what the conversation was before the shooting, why he fired the shots and why he left for Bakersfield after the shooting. The jury disbelieved the diminished capacity defense which was founded in part upon appellant's inability to recall events. They could have found that appellant's loss of memory was feigned, and that it was within the appellant's knowledge to fill in the gaps in his testimony. Since the evidence could have been so construed, it was not error to give instruction CALJIC No. 2.62. (*People v. Ramirez* (1980) 109 Cal.App.3d 529, 543 [167 Cal.Rptr. 174].) Even had the jury accepted appellant's explanation that he did not remember what happened and thus he was not able to explain or deny, the evidence of second degree murder and assault with intent to murder was overwhelming. The error would be harmless. (*People v. Saddler, supra*, 24 Cal.App.3d 671, 683-684.)

---

tify is left to the defendant, acting with the advice and assistance of his attorney. In this case defendant has elected to and has testified as to certain facts. If you find that he failed to explain or deny any evidence or facts against him which he can reasonbly be expected to deny or explain because of facts within his knowledge, you may take that failure into consideration as tending to indicate the truth of such evidence and as indicating that among the inferences that may be reasonably drawn therefrom those unfavorable to the defendant are the more probable. In this connection, however, it should be noted that if a defendant does not have the knowledge that he would need to deny or to explain evidence against him, it would be unreasonable to draw an inference unfavorable to him because of his failure to deny or explain such evidence. The failure of a defendant if any to deny or explain evidence against him does not create a presumption of guilt or by itself warrant an inference of guilt, nor does it relieve the prosecution of its burden of proving every essential element of the crime and the guilt of the defendant beyond a reasonable doubt."

■ Appellant contends the court instructed the jury incorrectly in the sanity phase of the trial by advising them of the consequences of a finding of not guilty by reason of insanity as follows: "If you find the defendant to have been insane at the time of the commission of the crimes, he will be evaluated by the county mental health director, who will then recommend appropriate treatment. The treatment may consist of confinement in a hospital or out-patient treatment, unless the crime was one of certain violent crimes for which hospital confinement is mandated by law for at least 90-days, or for such period of time as may be required by the hospital medical board." The appellant's argument is that the court did not fully explain Penal Code section 1026a, in that the maximum term of confinement and the procedure for hearing before release were not told the jury. Appellant complains that the instruction would lead the jury to believe that he would be released from a hospital in 90 days if the jury returned a verdict of not guilty by reason of insanity. Appellant's proffered but refused instruction omitted reference to the 90-day period of hospital confinement and included information that a noticed hearing was necessary before release. We find that the partial instruction given concerning disposition of those found not guilty by reason of insanity was error.

We must now determine whether the error in so instructing during the sanity phase was prejudicial to the appellant where the same jury had rejected his diminished capacity defense in the guilt phase. By stipulation the jury considered the evidence introduced in the guilt phase as having been given in the sanity phase. There was no further evidence given on the sanity issue.

In *People* v. *Smith* (1973) 33 Cal.App.3d 51 [108 Cal.Rptr. 698], disapproved on another point in *People* v. *Wetmore* (1978) 22 Cal.3d 318, 324, fn. 5 [149 Cal.Rptr. 265, 583 P.2d 1308], the prosecutor's argument implying that an insanity verdict would set loose a dangerous defendant upon the streets was found to be misconduct. However, the opinion held, at page 74, that the "array of evidence at the guilt trial" had impelled the jury to reject diminished capacity and the same evidence precluded any reasonable probability that the prosecutor's argument had influenced the jury in rejecting the insanity plea. The *Smith* court, at page 73, suggests that an appropriate instruction might inform the jury that an insanity verdict would result in a hospital commitment, even though California law does not require such an instruction. *Smith* cites a 1967 study of insanity trials which found that jurors are, nevertheless, generally aware that a criminally insane person

will be confined to a mental hospital until an authorized agency declares him sane, and that disposition of the insane defendant was not crucial to a jury's decision on sanity. (*Id.*, at p. 72.)

Were the considerations and decisions demanded of this jury on the diminished capacity issue different from those required of it in the sanity phase? We believe not, given the evidence and circumstances of this case bearing on those issues. The jury's task on the issue of diminished capacity was to consider any evidence of reduced mental capacity, from any cause, including irresistible impulse due to mental defect. (*People v. Smith, supra*, 33 Cal.App.3d 51.) The jurors in the present case rejected the diminished capacity defense and found appellant guilty of first degree murder. Then on the insanity issue they were required to determine whether appellant, from mental illness or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law. (*People v. Drew, supra*, 22 Cal.3d 333.) The claim of diminished capacity presented to this jury had been based upon a cognitive element, that is appellant's lack of awareness of his surroundings and of what he was doing. "A claim of diminished capacity may be grounded on the cognitive factor (i.e., lack of awareness or consciousness) or on lack of volition, for example, irresistible impulse." (*People v. Smith, supra*, 33 Cal.App.3d 51, 74.)

We observe that *Drew* departed from the McNaughten emphasis upon cognition and added other factors, the inability of a defendant to recognize wrongfulness or to comport his conduct with the law because of mental disease. (*People v. Drew, supra*, 22 Cal.3d 333, 342-344, Instrn. CALJIC No. 4.00, fn. 3.) The psychiatric and other evidence presented on both issues, diminished capacity and sanity, involved the appellant's contention that he lacked cognitive ability to premeditate, to harbor malice, to intend to kill, as well as his defense of a volitional inability to appreciate criminality and conform his conduct with the law. "The circumstantial evidence which supported the finding of undiminished capacity would be admissible on the insanity issue were the issues heard by the same or separate juries." (*People v. Smith, supra*, 33 Cal. App.3d 51, at p. 75.) Although the *Smith* case came before *Drew*, its reasoning on the point involved is applicable here. In the instant case, testimony of psychiatric experts and possibly other evidence, led the jury to find against diminished capacity. That evidence, and the decision based upon it, preclude any reasonable probability that the faulty instruction later induced the jury to find appellant sane. The error was

harmless. (*People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243]; *People* v. *Saddler, supra*, 24 Cal.App.3d 671, 683-684.)

*Concerning Adequacy of Defense Counsel*

Appellant complains that by reason of the jury's concentration upon the self-defense instruction offered by his counsel he was thus denied the defense of diminished capacity. He refers to the trial court's comments at the time of motion for new trial (*supra*). Because of this abandonment of a crucial defense he claims that he did not have the effective assistance of counsel and urges that *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859, 2 A.L.R.4th 1] applies. By that case and many since, if trial counsel fails to act in a manner to be expected of a reasonably competent attorney acting as a diligent advocate and his acts or omissions resulted in withdrawal of a potentially meritorious defense, the conviction must be reversed. Appellant argues that his attorney in presenting the self-defense theory virtually withdrew the diminished capacity defense. But we observe that there was evidence to justify self-defense instructions and we do not choose to second-guess counsel's trial tactics. (*People* v. *Lanphear, supra*, 26 Cal.3d 814, 828; *People* v. *Cruz* (1980) 26 Cal.3d 233, 255 [162 Cal.Rptr. 1, 605 P.2d 830].) We find that the record shows defense counsel to have acted "'[I]n a manner to be expected of reasonably competent attorneys acting as diligent advocates.'" (*Ibid.*)

Appellant's assertion that he was denied competent counsel at the probation hearing is not borne out by the record. Trial counsel's argument on sentence and, later, on motion for new trial showed a grasp of the facts and issues and raised points appellant now urges as grounds for reversal. Counsel's concurrence in proceeding with the hearing on the day he received the probation report does not reflect lack of knowledge of the report which he was granted time to read. Unlike the defense attorney in *People* v. *Cropper* (1979) 89 Cal.App.3d 716 [152 Cal.Rptr. 555], who concurred with the recommended denial of probation, appellant's counsel argued strongly for him.

Appellant asserts that his trial counsel's failure to file a statement in mitigation is evidence of inadequate representation. The record does not support him on this point. His counsel argued the facts, particularly the mitigating factor of appellant's mental condition, and urged the court to impose the lower term. The probation report disclosed some mitigating circumstances. Whether there were others we do not know. The record

does not establish that a statement in mitigation would have resulted in a shorter sentence or that defense counsel was less than diligent in the hearing.

### Concerning Allegations of Other Judicial Error

■ Appellant finds error in the court's ruling during the cross-examination of the psychiatrist who testified that in her opinion appellant was schizophrenic-paranoid, lacked capacity to premeditate, to appreciate the criminality of his acts and to conform to the law. Dr. Winifred Meyer, the witness, testified that she had read and used the Diagnostic and Statistical Manual in arriving at her diagnosis. The ruling complained of was in permitting the prosecutor to read from a third edition of the Manual in examining the witness concerning the basis for her medical opinion. There was objection that the procedure was improper. The court overruled the objection.

The cross-examination disclosed that the witness possessed detailed knowledge of that edition of the *Manual* the prosecutor had before him as he questioned her on the characteristics of schizophrenia, and that she had considered the presence or the absence of the symptoms listed in the book in forming her opinion concerning appellant. Where an expert testifies in the form of an opinion, under section 721 subdivision (b) of the Evidence Code, cross-examination is permitted in regard to the content or tenor of any scientific, technical or professional publication if the witness has referred to, considered or relied upon the publication in forming his opinion. Jefferson, California Evidence (1972) section 29.10, pages 523-524, goes farther and states that the law permits cross-examination of an expert witness regarding a publication or report that the witness has "*considered, referred to* or *read*, but upon which he did *not* rely in forming his opinion." There was no error in the ruling.

■ Appellant asserts that the court committed reversible error in permitting the prosecutor to cross-examine defense psychiatrist, Dr. Meyer, concerning a transcript of appellant's Wisconsin extradition hearing five days after the crime. The seven-page transcript was presented to the witness while she was on the stand, she read it and the following cross-examination occurred:

"Q. Did you have a chance to review People's 83 for identification?

"A. Yes, briefly.

"Q. Does it indicate a colloquy or a discussion between the defendant and a judge?

"A. Yes.

"Q. Does it involve the legal issue of extradition?

"A. Yes.

"Q. And does the defendant respond to those questions.?

"A. Yes, he does.

"Q. That was on the 15th—if I told you it was on the 15th of August, would that change your opinion [objection sustained to form of the question] your opinion about his ability to premeditate and deliberate?

"THE COURT: On August 10th?

"Q. On August 10th.

"A. No, it does not."

On redirect examination, defendant counsel asked more specific questions about the transcript of the extradition hearing. The redirect questioning concerned the Wisconsin judge's examination of appellant during arraignment for waiver of extradition. Appellant responded that he understood his rights regarding extradition; that he was licensed to practice law; that he had signed the waiver; that he had no questions about the proceedings; and that he had had no drugs for five or six days. Dr. Meyer was then asked whether that exchange would alter her diagnosis. She responded negatively. Appellant relies upon *People* v. *Rucker* (1980) 26 Cal.3d 368, 388 [162 Cal.Rptr. 13, 605 P.2d 843], to argue error. The *Rucker* court ruled that information elicited during a police booking interview was not admissible on the criminal charges or on rebuttal following a diminished capacity defense. Assuming that the Wisconsin arraignment judge occupies the same role as the booking officer for the purpose of considering the point, the instant case is distinguishable. The probative value, if any, of the answers given by appellant to the Wisconsin judge could only be evaluated by hearing

them. If there was error at all it was invited because the answers were introduced by appellant. (*People* v. *Moran, supra*, 1 Cal.3d 755, 762.) Also, in *People* v. *Barnett* (1980) 113 Cal.App.3d 563, at page 576 [170 Cal.Rptr. 255], the court held that *Rucker* is not to be applied retroactively. Further, the record shows an objection having been made on the grounds that reference to the transcript was prejudicial, irrelevant and hearsay, with no *Miranda* objection having been made. The issue was thus waived for purposes of appeal. (*People* v. *Burden* (1977) 72 Cal.App.3d 603, 614 [140 Cal.Rptr. 282].) The statements appear to be innocuous in view of the psychiatrist's response that her opinion of the appellant's mental state at the time of the offense remained unchanged. Assuming error in permitting reference to the Wisconsin transcript, it was harmless "under either the reasonable probability test of *People* v. *Watson* (1956) 46 Cal.2d 818 . . ., or the beyond a reasonable doubt standard of *Chapman* v. *California* (1967) 386 U.S. 18." (*People* v. *Barnett, supra*, 113 Cal.App.3d 563, 576.)

 Appellant finds error in the court's denial of a motion to order the Sheriff of Ventura County, who held him in the county jail, to permit him to shave before bringing him to court and to remain free of handcuffs and leg restraints on the sheriff's bus to and from court. There is no record that appellant appeared unshaven or in shackles during trial or before the jury. Court restrictions upon a defendant's appearance in shackles in the courtroom or before jurors are common and court appearances in jail clothing can be curtailed in the interests of a fair trial. (*People* v. *Duran* (1976) 16 Cal.3d 282, 293 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People* v. *DuBose* (1970) 10 Cal.App.3d 544, 549 [117 Cal.Rptr. 235].) But the issues raised by appellant regarding shaving, and leg restraints during transportation, did not affect the conduct or outcome of the trial. We find no error in the court's refusal to intervene in minute matters of jail administration and security, better left to the sheriff.

 Another motion made by appellant was to order the sheriff to permit him to have in his cell and in his possession in jail and in court, his notes, documents or correspondence. The court denied the motion without prejudice to its being renewed on notice. It was not renewed. The court did permit appellant to have possession of his notes in jail and in court during trial. At a pretrial motion he requested that the court order the sheriff to bring the notes from the jail, or that the motion be postponed to a time when appellant's notes would be available. The motions were denied.

Appellant complains that he was, by the appropriation of his notes and the court's refusal to correct the sheriff's holding the papers, denied the effective aid of counsel in preparation of his case. He mistakenly relies upon *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742 [157 Cal.Rptr. 648, 598 P.2d 818], a case where the police placed an undercover officer to overhear attorney-client conversations. That case ruled that the police conduct in intercepting attorney-client communications had prejudiced the ability of defense counsel to prepare for trial. In the present case, defense counsel announced that he had a duty to obtain his client's viewpoints, but he did not say why that could not be done in an oral conference. There was no evidence, as there was in *Barber*, that police misconduct compromised attorney-client confidentiality or resulted in prejudice to the appellant.

The sheriff is charged with the responsibility of administering the jails. (Pen. Code, §§ 4000, 4015, 4115.) The security, legal and administrative problems attendant to permitting county non pro per prisoners to keep papers and documents on their persons or in their cells can be easily imagined. "Courts should, of course, exercise their power to prevent inhuman or cruel treatment or undue restraint of those unfortunate enough to be confined in jails. But the courts should not hamper officials charged with the duty of maintaining jails and having the custody of those charged with crime, by interfering with long-established regulations which do not appear to be unreasonable." (*Akamine* v. *Murphy* (1951) 108 Cal.App.2d 294 [238 P.2d 606]; 2 Witkin, Cal. Crimes (1963) § 908, p. 863.) We find the conduct of the sheriff in respect to the notes to have been reasonable. And we do not accept appellant's argument that he was deprived of effective representation by the sheriff's holding the notes or failure of the court to grant the orders.

Appellant asserts that he was denied due process at the probation and sentence hearing because of the tardiness in delivery of the probation report and the court's refusal to continue the hearing. Section 1203, subdivision (b) of the Penal Code requires that the probation report be furnished to counsel and court at least nine days before the hearing. At the hearing, defendant counsel stated: "If Your Honor please, good morning, if we could maybe have five minutes with Mr. Kozel. We did not receive a copy of the report until this morning." The court granted permission. Then after counsel had read the report, the court suggested that the motion for new trial be heard first, followed by the morning recess, to give counsel further time to read the report. De-

fense counsel responded, "Fine." The motion for new trial was heard. The court denied the motion, reduced count I to murder, second degree, and stated that it would recess for twenty minutes. The court asked defense counsel if he needed more than twenty minutes and the response was, "No, I don't think so, Your Honor."

After the recess, the court denied appellant's motion for continuance to permit the doctors involved to submit reports. The court pointed out that it had such reports at hand. The court denied a motion, based upon the reduction of the degree of the murder, that it order a supplemental probation report. The deputy probation officer who had written the report was present and stated that his recommendation remained the same; state prison for the aggravated term and a consecutive term, on count II, with enhancements. Defense counsel did not examine the probation officer concerning the report and recommendation. He argued against the recommended upper term and urged the court to impose the low term.

After the motion for a new trial was heard and count I reduced, it was discretionary with the court to grant or deny the request for continuance to receive a supplemental report or doctor's reports. (*People v. Peace* (1980) 107 Cal.App.3d 996, 1001 [166 Cal.Rptr. 202]; *People v. Nelson* (1967) 257 Cal.App.2d 282, 285 [64 Cal.Rptr. 801].) There were reports and recommendations of four doctors and an informative probation report, all of which had been read by the court. The hearing included defense argument on sentence and an opportunity for the defense to examine the deputy probation officer. The hearing did not lack fundamental fairness. There was no abuse of discretion by the court in proceeding with the hearing or in denying the motions. (*People v. Edwards* (1976) 18 Cal.3d 796, 807 [135 Cal.Rptr. 411, 557 P.2d 995].)

*Concerning Sentencing*

■ Appellant contends that in sentencing the trial court committed several errors. The first is alleged to be the sentencing to a seven-year upper term without the court having set forth its reasons for applying the lower or upper term. The record reflects that the court found that the appellant planned the killing. Planning is indicative of premeditation, one of the aggravating circumstances listed in California Rules of

Court, rule number 421(8). The court discussed the offenses and the probation report at length. It remarked upon but did not specifically adopt the probation officer's finding of five aggravating factors and only one circumstance in mitigation. Appellant's then-present dangerous animosity toward his wife and child was also referred to by the court. The statements made by the court reflect reasons for the upper term sentence and comply with the requirement of section 1170, subdivision (c) of the Penal Code that such reasons be stated. (*People* v. *Eades* (1979) 95 Cal.App.3d 688, 690 [157 Cal.Rptr. 223].)

 The appellant also urges that the court erred in failing to state its reasons for the consecutive sentence in count II. Respondent replies that California Rules of Court, rule 425(b) provides that any circumstance in aggravation can be utilized to impose a consecutive sentence, and because the trial court gave reasons in Count I to aggravate the sentence, there is no need to restate those reasons for imposing a consecutive term. Respondent also argues that there is nothing in California Rules of Court, rule 441 to prohibit the dual use of any circumstance to impose an upper term in the first count and a consecutive sentence in a following count. But we are not persuaded that dual use of a circumstance can be made to aggravate a sentence and impose a consecutive term. Rather, we adopt the view expressed in *People* v. *Lawson* (1980) 107 Cal.App.3d 748, 757 [165 Cal.Rptr. 764], that a consecutive term is a sentence enhancement within the dual-use-of-facts prohibition of section 1170, subdivision (b), Penal Code. And we note that a consecutive sentence is a sentencing choice, and as such, a specific reason for its imposition is required to be stated. (*People* v. *Walker* (1978) 83 Cal.App.3d 619, 622 [148 Cal.Rptr. 66].) Although California Rules of Court, rule 425(b) permits any circumstance in aggravation to be utilized to impose a consecutive sentence, the record is not clear what circumstance was considered, or whether there may have been a dual usage of a circumstance to impose a consecutive term. On remand for resentencing, if the same sentence be imposed, specificity in respect to which of the several circumstances relied upon in imposing the upper term, and separately, for the consecutive sentence, will facilitate appellate review, should there be any.

 Appellant's final point regarding the sentence is an argument under *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], that the eight-month consecutive sentence for firearm use imposed upon count II was error because that crime, assault with intent

to commit murder, was not listed in Penal Code section 667.5, subdivision (c). He cites section 1170.1 of the Penal Code before its amendment in May 1980, "The subordinate term for each consecutive offense... shall exclude any enhancements when the consecutive offense is not listed in subdivision (c) of section 667.5...." On May 29, 1980, the Legislature's attempt to reverse the effect of the Supreme Courts *Harvey* decision, went into effect. The Act (Stats. 1980, ch. 132) amended section 1170 of the Penal Code to "clarify and re-emphasize what has been the legislative intent since July 1, 1977." Section 2 of the statute incorporates paragraph (8) of subdivision 667.5 into section 1170 of the Penal Code, to state that sentence enhancement provisions apply to any felony in which armed, use of firearm or bodily injury facts are alleged and proved. "The amendment specifically states that enhancement under 1170.1, subdivision (a) is not limited to the specific felonies listed in subdivision (c) of section 667.5." (*People* v. *Young* (1981) 120 Cal.App.3d 683, 696 [175 Cal.Rptr. 1].) (Stats. 1980, ch. 132, *supra.*)

There are differing appellate court views of the application of the act to crimes committed before its effective date. The People urge that the legislation should be applied retroactively and cite *In re Ferrie*\* (Cal. App.) which did so. The reasoning in *Ferrie* was that the Legislature had clarified its original intent by the act, and that the *Harvey* interpretation and stare decisis should not be followed to thwart legislative intent. We are aware that *Ferrie* has been accepted for hearing by the California Supreme Court.

We adopt the view of other courts that as an intermediate appellate court we must abide by the doctrine of stare decisis which compels inferior courts to follow the decisions of courts exercising superior jurisdiction. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *People* v. *Savala* (1981) 116 Cal.App.3d 41, 58 [171 Cal.Rptr. 882]; *People* v. *Young* (1981) 120 Cal.App.3d 683, 696 [175 Cal.Rptr. 1]; *People* v. *Matthews* (1980) 108 Cal.App.3d 793, 796 [167 Cal.Rptr. 8].) Accordingly, appellant is entitled to have the *Harvey* holding applied to the Penal Code section 12022.5 use of a firearm enhancement imposed upon count II and that enhancement term, upon resentencing, shall be stricken.

---

\*Reporter's Note: Hearing granted, April 24, 1981. On August 26, 1981, the cause was retransferred to the Court of Appeal, Third Appellate District, with directions. Subsequent opinion was not certified for publication.

The judgment is reversed for resentencing pursuant to the views expressed in this opinion. In all other respects it is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied August 4, 1982, and appellant's petition for a hearing by the Supreme Court was denied September 22, 1982.